JUDGE PRESKA

DAVIS & GILBERT LLP
Neal H. Klausner
Allie Lin
1740 Broadway
New York, New York 10019
(212) 468-4800

07 CIV 9694

Attorneys for Plaintiff
THE ARMORED GROUP, LLC

OCT 31 2007
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE ARMORED GROUP, LLC,

                 Plaintiff,

   -against-

HOMELAND SECURITY STRATEGIES, INC.,
SECURITY INTELLIGENCE TECHNOLOGIES,
INC., BEN JAMIL, and CHRIS R. DECKER,

               Defendants.

07 Civ. _____

COMPLAINT

Plaintiff The Armored Group, LLC ("Plaintiff" or "TAG"), by its attorneys,

Davis & Gilbert LLP, for its Complaint against defendants Homeland Security Strategies,

Inc. ("HSS"), Security Intelligence Technologies, Inc. ("SIT"), Ben Jamil ("Jamil"), and

Chris R. Decker ("Decker") (collectively, the "Defendants"), states as follows:

## NATURE OF THE ACTION

    1.    In or around April 2006, TAG, in order to complete a contract with

one of its clients (the "Client"), entered into an agreement with HSS (the "Agreement")

for the purchase and installation of four customized BombJammers™ ("Jammers"). Pursuant to the terms of the Agreement, TAG made an advance payment of $450,000 against the total purchase price of $860,000, upon execution of the Agreement.

2.      HSS agreed to complete and deliver the four Jammers on or before October 14, 2006. Pursuant to the terms of the Agreement, TAG would pay the remaining balance only after certain conditions precedent occurred, including but not limited to: (a) the installation of the Jammers by HSS, and (b) the inspection and acceptance of the Jammers by TAG's Client.

3.      Shortly after the parties entered into the Agreement, Defendants informed TAG that they would not perform under the Agreement unless they were paid an additional $250,000. The Agreement did not require any such payment.

4.      In violation of the Agreement, HSS did not complete, deliver or install any of the four Jammers by the October 14, 2006 deadline.

5.      Furthermore, Defendants has failed and refused to refund the advance payment made by TAG in the amount of $450,000.

6.      As a result of HSS' breach of its Agreement with TAG, TAG could not complete its contractual obligation to its Client and therefore, suffered consequential damages. Furthermore, TAG's Client has threatened to take action against TAG for not completing its contractual obligation.

2

7.    By this action, TAG seeks to recover compensatory, consequential and punitive damages it has suffered as a result of Defendants' actions, along with costs, interest and attorneys' fees, and such other and further relief the Court deems proper.

**THE PARTIES**

8.    Plaintiff TAG is an Arizona limited liability company with its principal place of business at 5221 North Saddlerock Drive, Phoenix, Arizona 85018. TAG provides armoring services to a variety of clients all over the world.

9.    Defendant HSS is a Delaware corporation, with its principal place of business at 145 Huguenot Street, New Rochelle, New York 10801. HSS has a wide repertoire of surveillance, counter-terrorism and electronic jamming among other products and services. HSS is a wholly-owned subsidiary of SIT.

10.    Defendant SIT is a Florida corporation, with its principal place of business at 145 Huguenot Street, New Rochelle, New York 10801. SIT is a publicly traded company that designs, assembles, markets and sells security products for use by military, law enforcement and security personnel in the public and private sectors.

11.    Defendant Jamil, upon information and belief, at all times mentioned herein, is a resident of New York. Upon information and belief, Jamil is the Chairman of the Board, Chief Executive Officer, and majority shareholder of HSS and SIT.

3

12.    Defendant Decker, upon information and belief, at all times mentioned herein, is a resident of New Jersey. Upon information and belief, Decker is the Chief Financial Officer and a Director of HSS and SIT.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, excluding interest and costs.

14.    Venue is proper in this District under 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15.    In or around March 2006, TAG contracted with its Client to build and deliver armored vehicles. The contract called for the vehicles to contain security systems designed to defend against Remotely Controlled Improvised Explosive Devices ("RCIEDs"), which utilize radio transmitters to initiate the detonation of bombs.

16.    In or around April 2006, TAG, in order to complete the terms its contract with its Client, sought the goods and services of HSS. Specifically, TAG sought to purchase and have installed four customized Jammers. A Jammer prevents detonation of an explosive by interfering with the reception of the radio transmission that the bomber initiates to trigger the bomb.

17.    TAG explained to Defendants that time was of the essence. Furthermore, Defendants and TAG's Client were in direct contact with each other to

4

discuss the technical specifications of the four Jammers. Defendants knew that TAG was dependent on HSS to deliver the four Jammers in a timely fashion, and that failure to provide the Jammers would endanger TAG's contract with its Client.

18.    In order to induce TAG into entering into the Agreement, Defendants represented to TAG that Defendants could and would obtain and install the four Jammers and could and would do so in a timely fashion. At the time that Defendants made the representations, they knew that they were false.

19.    In reasonable reliance upon these representations by Defendants, on or about April 10, 2006, TAG entered into the Agreement with Defendants. A copy of the Agreement is attached hereto as Exhibit A.

20.    Pursuant to the Agreement, HSS was to install one of the Jammers and train TAG so that it could install the remaining Jammers. (Ex. A at 6, Section 4: Installation and Training.)

21.    The terms of the Agreement were negotiated between TAG and specifically Jamil and Decker.

22.    Pursuant to the Agreement, TAG was required to pay $450,000 to HSS against the total order of $860,000, upon execution of the Agreement (*Id.* at 6, Section 3: Payment Terms.)

23.    TAG would pay the remaining balance only after certain conditions were met. Specifically, the Agreement provided:

5

> As conditions precedent to Purchaser's obligation to pay the remaining balance of $410,000 all the following events must occur: (1) Installation of the four Jammers in Purchaser's vehicles in either Cleburne, TX or in Purchaser's installation facility in Long Island, NY; (2) Purchaser's client inspects and accepts the four Jammers; and (3) Purchaser receives payment in full from Purchaser's client. The choice of location for installation shall be at Purchaser's discretion.

(*Id.*)

24.     Furthermore, HSS agreed to complete and deliver the four Jammers to TAG on or before October 14, 2006. The Agreement provided:

> Failure to deliver the Jammers on or before this date shall be a material breach of this Agreement and HSS shall immediately reimburse [TAG] any monies paid to HSS pursuant to this Agreement without demand.

( *Id.* at 7, Section 6: Dates for Completion and Delivery.)

25.     On or about April 14, 2006, pursuant to the payment terms of the Agreement and at the urging of its Client, TAG made an advance payment of $450,000 to HSS via electronic wire transfer.

26.     Shortly thereafter, Defendants, in no uncertain terms, stated that they would not perform unless TAG paid an additional $250,000, which was not required by the Agreement. TAG made formal demands upon Defendants, and each of them, to complete their obligations under the Agreement by the deadline. Despite TAG's efforts, TAG did not receive any Jammers by the October 14, 2006 deadline.

27.    Additionally, Defendants failed and refused to refund the advance payment made by TAG in the amount of $450,000. As of the date of this Complaint, Defendants, and each of them, failed and refused to cure their default, and TAG has been substantially injured in an amount to be proven at trial.

28.    Furthermore, as a result of HSS' breach of its agreement with TAG, TAG has been unable to complete its contract with its Client and therefore incurred consequential damages.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

29.    TAG repeats and realleges paragraphs 1 through 28 as if set forth fully herein.

30.    TAG duly performed all of the terms of the Agreement on its part to be performed.

31.    Despite numerous demands by TAG, HSS failed and refused to comply with its obligations as set forth expressly in the Agreement.

32.    Additionally, HSS failed and/or refused to return TAG's advance payment in the amount of $450,000, in breach of the Agreement.

33.    As a direct and proximate result of HSS' breach of the Agreement, TAG has sustained damages in an amount to be determined at trial, but in any event, not less than $2 million, plus interest and costs, and attorneys' fees.

7

## SECOND CAUSE OF ACTION
### (Fraudulent Inducement)

34.    TAG repeats and realleges paragraphs 1 through 33 as if set forth fully herein.

35.    TAG further alleges that Defendants, including Jamil and Decker, personally and individually, made false representations of material fact concerning the Agreement in order to induce TAG to agree to its terms.    Specifically, Defendants represented to TAG that Defendants could and would obtain and install the four Jammers and could and would do so in a timely fashion.

36.    These representations were false.

37.    The representations were material, which means that they were sufficiently important to influence TAG or the actions of a reasonable person or entity in TAG's position.

38.    Defendants knew that the representations were false.

39.    Defendants intended that TAG would act upon the representations in the manner reasonably contemplated by Defendants.

40.    TAG did not know the representations were false.

41.    TAG relied on the truth of the representations.

42.    TAG's reliance was reasonable and justified under the circumstances.

8

43.    Had TAG known that the representations were false, it would not have entered into the Agreement.

44.    As a direct and proximate result of the fraudulent acts of Defendants, TAG has sustained damages in an amount to be determined at trial, plus interest and costs, and attorneys' fees.

45.    Defendants' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

### THIRD CAUSE OF ACTION
**(Tortious Interference With Contract)**

46.    TAG repeats and realleges paragraphs 1 through 45 as if set forth fully herein.

47.    Defendants were aware that TAG had an existing contract that relied upon the compliance with the terms of the Agreement for the purchase and installation of the four Jammers.

48.    Despite Defendants' knowledge of TAG's contractual commitments to its Client, Defendants' conduct made it impossible for TAG to complete the contract with its Client.

49.    As a direct and proximate result of Defendants' breach of the Agreement, TAG has sustained consequential damages in an amount to be determined at

9

trial, but in any event, not less than $1.5 million, and its relationship has been irreparably damaged with its existing Client.

50.    Defendants' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

## FOURTH CAUSE OF ACTION
### (Conversion)
### (As an Alternative to the First Cause of Action)

51.    TAG repeats and realleges paragraphs 1 through 50 as if set forth fully herein.

52.    Because HSS failed to deliver the Jammers on or before the October 14, 2006 deadline, TAG is the rightful owner of the $450,000 advance deposit that it paid to HSS. HSS has failed and/or refused to return TAG's advance payment of $450,000.

53.    HSS has wrongfully, and without permission, gained possession of, and converted to its own use, TAG's advanced payment of $450,000.

54.    As a direct and proximate result of HSS' conversion, TAG has sustained damages in an amount to be determined at trial, but in any event, not less than $450,000, plus interest and costs, and attorneys' fees.

55.    HSS' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (As an Alternative to the First and Fourth Causes of Action)

56.     TAG repeats and realleges paragraphs 1 through 55 as if set forth fully herein.

57.     HSS accepted TAG's advance payment of $450,000.

58.     TAG reasonably expected delivery of the four Jammers on or before the agreed-upon deadline of October 14, 2006.

59.     HSS has willfully failed to complete its obligations under the Agreement and to return the advance payment in the amount of $450,000, without reason.

60.     As a direct and proximate result of the foregoing, HSS has been unjustly enriched at the expense of TAG in an amount to be determined at trial, but in any event, not less than $450,000, plus interest and costs, and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Indemnity/Contribution)

61.     TAG repeats and realleges paragraphs 1 through 60 as if set forth fully herein.

62.     Defendants knew that TAG would rely upon receipt and installation of the Jammers in order to comply with the terms of the contract with its own Client. Defendants knew that if they breached the terms of the Agreement with TAG, that they would make it impossible for TAG to complete its contract with its own Client.

11

63.     To the extent that TAG has suffered injury or damages as a result of the acts, incidents and/or occurrences in TAG's Complaint, Defendants are responsible in whole or in part for such injury or damage.

64.     In equity and good conscience, if TAG is ever found liable to its Client by virtue of TAG's inability to complete its contract with its Client, then TAG is entitled to complete indemnification from Defendants for the full amount of any judgment, plus interest and costs, and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Declaratory Judgment that HSS' Corporate Veil Shall Be Pierced)

65.     TAG repeats and realleges paragraphs 1 through 64 as if set forth fully herein.

66.     Upon information and belief, SIT and Jamil, at all times, exercised complete domination and control over the operation, management and financial affairs of HSS.

67.     Upon information and belief, SIT and Jamil controlled the operation of HSS without regard for corporate formalities.

68.     Upon information and belief, HSS was, from its inception, a highly undercapitalized corporation.

69.    Upon information and belief, SIT and Jamil diverted the corporate funds of HSS for SIT's corporate and Jamil's personal uses.

70.    Upon information and belief, by diverting the corporate funds of HSS, SIT and Jamil committed a wrong against TAG because the actions of SIT and Jamil caused HSS to have insufficient funds to complete performance under the terms of the Agreement.

71.    By fraudulently misrepresenting HSS' ability to perform under the terms of the Agreement, Jamil committed a fraud against TAG under the guise of the corporate form and caused TAG to enter into the Agreement that it would not have otherwise.

72.    SIT and Jamil operated HSS as their "alter ego," perverting and abusing the privilege of doing business in the corporate form.

73.    With respect to SIT and Jamil's liability for HSS' actions, TAG has no adequate remedy at law.  Accordingly, TAG seeks a declaration that the corporate veil of HSS shall be pierced; that HSS is the alter ego of both SIT and Jamil; and that SIT and Jamil are liable for HSS' actions, omissions and debts.

**WHEREFORE,** Plaintiff prays for judgment to be entered in favor of Plaintiff and against Defendants as follows:

A.    On the first cause of action, that Plaintiff have judgment against Defendants in an amount to be determined at trial, but in any event, not less than $2

13

million;

B.   On the second cause of action, that Plaintiff have judgment against Defendants in an amount to be determined at trial;

C.   On the third cause of action, that Plaintiff have judgment against Defendants in an amount to be determined at trial, but in any event, not less than $1.5 million;

D.   On the fourth cause of action, in the alternative, that Plaintiff have judgment against Defendants in an amount to be determined at trial, but in any event, not less than $450,000;

E.   On the fifth cause of action, in the alternative, that Plaintiff have judgment against Defendants in an amount to be determined at trial, but in any event, not less than $450,000;

F.   On the sixth cause of action, that Plaintiff have judgment against Defendants in an amount to be determined at trial;

G.   On the seventh cause of action, that Plaintiff have declaratory judgment that HSS is the alter ego of both SIT and Jamil and the corporate veil of HSS shall be pierced;

H.   That Plaintiff be awarded punitive damages, in an amount to be determined at trial;

I.     That Plaintiff be awarded pre-judgment and post-judgment interest on all amounts ordered, in an amount to be determined at trial;

J.     That Plaintiff be awarded its full costs of suit and reasonable attorneys' fees; and

K.     That Plaintiff be granted such other relief as this Court deems just and proper.

Dated: October 30, 2007

DAVIS & GILBERT, LLP

By:_____

Neal H. Klausner, Esq.
Allie Lin, Esq.
1740 Broadway
New York, New York 10019
(212) 468-4800

15

# EXHIBIT A

04/14/06  15:50 FAX 1914685...11        19146549411
Homeland Security                                              ☑002



**BUSINESS CLASSIFIED**

BOMBJAMMER™ 

04/14/06  13:50 FAX 1914654..11      19146549411                    @003
                                     Homeland Security



Ref. 2006-1-0194



# Homeland Security Strategies, Inc.

## SALES AGREEMENT

### FOR:

## The Armored Group LLC
## April 10, 2006



Phone: +1-914-654-8700 · Fax: +1-914-654-1802

www.bombjammer.com

New York · Miami · London · Sofia



GSA # GS-07F-5678R
(CAGE) Code - 3WGG8



Disclaimers

· All descriptions of HSS products and systems are published for informative purposes only.
· All Bomb Jamming devices in part or whole are strictly regulated by the US Department of State in accordance with the guidelines in the International Traffic in Arms (ITAR) per title 22, Code of Federal Regulations (CFR), Parts 120-130. Therefore, if you are outside the United States, INCLUDING Canada, an export license must be obtained.
· All sales and shipping are subject to license approval by US Department of State.



Confidential

Copyright© 2005 Homeland Security Strategies, Inc. All rights reserved.   No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.

04/14/08  15:51 FAX 19146541...11        19146548411
                                        Homeland Security                              ☑004



*Ref: 2006-1-0134*

**This Agreement ("Agreement") made on April 10, 2006**

By and Between:

1. **Homeland Security Strategies, Inc.;** a company duly organized and existing under and by virtue of the laws of Delaware and having its registered offices at 145 Huguenot Street, Suite 310, New Rochelle, NY 10801 (referred to as "HSS"); and

2. **The Armored Group LLC** having an address of 3001 North Main Street, Cleburne, TX 76033, USA (referred to as "PURCHASER")

### WITNESSETH

WHEREAS HSS has a wide repertoire of surveillance, counter-terrorism, electronic jamming among other products and services.

AND WHEREAS PURCHASER is interested in purchasing products from HSS.

NOW THEREFORE in consideration of the various covenants, premises, and conditions set forth below the parties agree as follows:

## 1  Description of Purchased Items

PURCHASER agrees to purchase and HSS agrees to sell the following items per the quantities and prices specified in the attached Pro-Forma Invoice:

### 1.1  BombJammer™ VIP-300T – CUSTOMIZED Trunk Mounted Bomb Jammer

The customized BombJammer™ VIP-300T ("Jammers") is a Jamming System designed to defend against Remotely Controlled Improvised Explosive Devices (RCIEDs) that utilize a radio transmitter to initiate the detonation of the bomb. The BombJammer™ prevents the detonation of the explosive by interfering with the reception of the radio transmission that the bomber initiates to trigger the bomb. It does this by radiating a jamming signal that obliterates the desired command signal as perceived by the receiver in the RCIED.

Confidential

Copyright© 2005 Homeland Security Strategies, Inc. All rights reserved.  No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.



04/16/08  13:51 FAX 18146516.11        19148546411
                                       Homeland Security                                    @005



Ref: 2006-1-0104

## SPECIFICATIONS

| JAMMING FREQUENCY RANGE | Band 1: 20-150 MHz |
| --- | --- |
| | Band 2: 150-500 MHz |
| | Band 3: 500-800 MHz |
| | Band 4: 800-1000 MHz |
| | Band 5: 1000-1400 MHz |
| | Band 6: 1400-1800 MHz |
| | Band 7: 1800-2000 MHz |
| | |
| | Band 8: 2000-2400 MHz |
| | Band 9: 2400-2500 MHz |
| | Band 10: 2500-3500 MHz |
| | Band 11: 3500-5000 MHz |
| | Band 12: 5000-5400 MHz |
| | Band 13: 5400-5700 MHz |
| | Band 14: 5700-6000 MHz |
| INTERFERENCE TYPE | Fast Random Sweep |
| INTERFERENCE CATEGORY | Barrage |
| SYSTEM SIZE | Complete system fits inside the vehicle |
| OPERATION INDICATION POWER | > 680 Watts |
| POWER SUPPLY | 11-15 (13.42) V DC |
| TEMPERATURE RANGE | -20 C to 55 C |
| OPERATION TIME | Unlimited with engine running |
| COMPONENTS | Jammer, omni-directional antenna, remote control, power supply and cables (included in every model), User's Manual. |



Note: Some Frequency modules may combined and/or divided to meet space requirements

Confidential

Copyright© 2005 Homeland Security Strategies, Inc. All rights reserved.  No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.

Page 4 of 8



04/14/06  13:51 FAX 19146546411     19146546411
                                    Homeland Security                                   ☒006



Ref: 2006-1-0134

## CONFIGURATION

| Module No. | Freq. Range MHz | Power Output (W) | Antenna Type | Antenna Location |
|---|---|---|---|---|
| 1 | 20 – 150 | 100 | Proprietary Rod | Rear Bumper |
| 2 | 150 – 500 | 100 | Proprietary Rod | Rear Bumper |
| 3 | 500 – 800 | 75 | Blade | Inside Cover |
| 4 | 800 – 1000 | 75 | Blade | Inside Cover |
| 5 | 1000 – 1400 | 75 | Blade | Inside Cover |
| 6 | 1400 – 1800 | 75 | Blade | Inside Cover |
| 7 | 1800 – 2000 | 75 | Blade | Inside Cover |
| 8 | 2000 – 2400 | 15 | Blade | Inside Cover |
| 9 | 2400 – 2500 | 15 | Blade | Inside Cover |
| 10 | 2500 – 3500 | 15 | Blade | Inside Cover |
| 11 | 3500 – 5000 | 15 | Blade | Inside Cover |
| 12 | 5000 – 5400 | 15 | Blade | Inside Cover |
| 13 | 5400 – 5700 | 15 | Blade | Inside Cover |
| 14 | 5700 – 6000 | 15 | Blade | Inside Cover |

## 2.   Confidential Information

By virtue of this Agreement, the parties may have access to information that is confidential. The parties agree to hold each others confidential information in confidence for a period of three years from the date of this Agreement.

These restrictions shall not apply to information which:

(a)     is in the public domain other than by breach of this Agreement;

(b)     was in the possession of the receiving party before disclosure;

(c)     is lawfully obtained from a third party who is free to disclose it; or

(d)     either party is obligated by law to disclose.

Copyright© 2006 Homeland Security Strategies, Inc. All rights reserved.   No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.



Ref: 2006-1-0134

## 3    Payment Terms

Purchaser shall pay as an advanced payment of $450,000 against the total order of $860,000 upon execution of this Sales Agreement. As conditions precedent to Purchaser's obligation to pay the remaining balance of $410,000 all the following events must occur; 1. installation of the four Jammers in Purchaser's vehicles in either Cleburne, TX or in Purchaser's installation facility in Long Island, NY; 2. Purchaser's client inspects and accepts the four Jammers; and, 3. Purchaser receives payment in full from Purchaser's client. The choice of location for installation shall be at Purchaser's discretion.

HSS's banking information is as follows:

Bank Details:

Name and address of Bank – Wachovia, 50 Main Street, White Plains, NY

Account Number – 2000013018171

ABA# 031201467

Swift Code – PNBPUS33

For the account of - Homeland Security Strategies, Inc.145 Huguenot Street,New Rochelle, NY 10801


Freight and installation costs including air fare and accommodations, will be paid to HSS via wire transfer upon presentation of invoice for related expenses to PURCHASER.

## 4   Installation and Training

HSS is ready to install the Jammers upon request. Purchaser has requested the Jammers be installed in either Cleburne, TX or Long Island, NY. HSS will install the first and train Purchaser on installation procedure. Purchaser will install the second, third and fourth Jammers.

## 5   Warranty

HSS warrants the purchased products to be free from defects in materials and workmanship under normal use as follows:

(a)    For a period of One Year (the Warranty Period), HSS will repair any factory defect free of charge at any authorized HSS service facility.  After the Warranty Period, PURCHASER or subsequent purchasers must pay for all repair charges.

(b)    To obtain warranty service during the Warranty Period, PURCHASER or subsequent purchasers must deliver the defective product freight prepaid to any authorized HSS service facility

Copyright© 2005 Homeland Security Strategies, Inc. All rights reserved.  No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.



04/14/06  13:52 FAX 1014854  .11        19146548411
                                        Homeland Security                         ☒008



*Ref: 2006-1-0134*

(c)  This warranty does not cover any damages caused by an accident, misuse, abuse or negligence. This warranty is subject to the proper technical operation, maintenance and storage, in accordance with the supplied instructions. The warranty does not cover raw materials and small spare parts, which are replaced during technical maintenance if necessary (gaskets, bolts, nuts, pins, lamps fuses, etc.). This warranty shall be invalid if the product is subject to misuse or abuse, or if any repairs are attempted by anyone other than an authorized HSS factory service center technician.

(d)  This warranty is valid worldwide.

(e)  Warranty starts at the time of delivery.

(f)  This warranty is transferable during the Warranty Period to any subsequent purchasers.

## 6  Date for Completion and Delivery

HSS agrees to complete and deliver the four Jammers to Purchaser at a location specified by Purchaser on or before the 14th day of October, 2006. Failure to deliver the Jammers on or before this date shall be a material breach of this Agreement and HSS shall immediately reimburse Purchaser any monies paid to HSS pursuant to this Agreement without demand.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the first date written above.

On behalf of HSS                          On behalf of PURCHASER:

By: _____                     By: _____

Name: Chris R. Decker                     Name: _____

Title: Chief Financial Officer            Title: _____

Confidential                                                                      Page 7 of 8
Copyright© 2006 Homeland Security Strategies, Inc. All rights reserved.  No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.

04/11/06   15:52 FAX 191463...11    19146548411
Homeland Security    @009



914
654 8700

145 Huguenot street
New Rochelle
NY    10801

Ref: 2006-1-0134

## PRO-FORMA INVOICE

Provided To:
**The Armored Group LLC**
**Cleburne, TX**

Point of Contact:
**Mr. Dennis Mark**

| Date | Quotation # | Valid To | F.O.B. | Terms |
|------|------------|----------|--------|-------|
| 4/10/06 | 2006-1-0134 | April, 16, 2006 | Europe | Refer Item #3 |

| Qty | Description | Unit Price | Extended Price |
|-----|-------------|------------|----------------|
| 1 | BombJammer™ VIP-300T customized | $300,000 | $300,000.00 |
| 3 | BombJammer™ VIP-300T customized | $300,000 | $900,000.00 |
| | Qty Discount | | ($340,000.00) |
| | (Note: Discount offer valid to April 16, 2006) | | |
| | Local installation charges per trip: | | |
| | $11,000 installation charge for installation of first Jammer + air fare, and accommodations | | |
| | + $2,000 for each additional unit HSS installs | | |
| | Training during installation - free | | |
| | Delivery of all units: Within six months of receipt of $450,000 advanced payment | | |

| Subtotal | $860,000.00 |
|----------|-------------|
| Shipping | TBD |
| Total Amount Due | $860,000.00 |

**Banking Information**
**Bank name - Wachovia**
Bank address - 50 Main St., White Plains, NY
Bank ABA# 031201467 (for domestic transfers from U.S. banks only)
Bank Swift code# - PNBPUS33 (For international wires from foreign banks only)
For the account of:
Homeland Security Strategies, Inc.
Account # 20000 -13018171

Confidential

Page 8 of 8

Copyright© 2005 Homeland Security Strategies, Inc. All rights reserved.   No part of this document may be reproduced or transmitted, in any form, or by any means, without permission in writing from HSS.