UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

THE ARMORED GROUP, LLC,

                        Plaintiff,                           07 Civ. 9694 (LAP)

   -*against*-

HOMELAND SECURITY STRATEGIES, INC.,
SECURITY INTELLIGENCE TECHNOLOGIES,
INC. BEN JAMIL, and CHRIS DECKER,

                    Defendants.

------------------------------------------------------------------X

---

**MEMORANDUM OF LAW OF ALL DEFENDANTS IN SUPPORT OF MOTION
TO DISMISS THE SECOND, THIRD, FOURTH, SIXTH AND SEVENTH
CAUSES OF ACTION, AND ALL CLAIMS FOR PUNITIVE DAMAGES AND
ATTORNEYS' FEES OF THE PLAINTIFF'S COMPLAINT**

---

ANDREW GREENE & ASSOCIATES, P.C.
Attorneys for Defendants
202 Mamaroneck Avenue
White Plains, New York 10602
(914) 948-4800

On The Brief:  Thomas C. Landrigan (TL-3116)

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................... 1

STATEMENT OF FACTS ............................................................. 2

    A.    The Plaintiff And Defendant, HSS, Enter Into An Agreement And
           No Other Defendants Are Alleged To Be Parties To The Agreement. ......... 2

    B.    Agreement Annexed At Exhibit A Contains Indicia That HSS
           Is A Distinct Entity. .................................................... 3

    C.    Plaintiff Electronically Wires Advanced Payment To HSS Only ............. 4

    D.    Plaintiff Alleges That Defendant HSS Failed To Perform Under
           The Agreement ........................................................ 4

    E.    Agreement Between HSS And TAG Is The Subject of The Entire
           Complaint ............................................................. 5

ARGUMENT ....................................................................... 6

        POINT I

        RECENT SUPREME COURT PRECEDENT REQUIRES DISMISSAL
        OF CLAIMS THAT ARE MERELY "CONCEIVABLE", BUT WHICH
        ARE NOT SUFFICIENTLY AMPLIFIED TO MAKE SAME
        "PLAUSIBLE" ON THEIR FACE ..................................... 6

        POINT II

        THE SECOND CAUSE OF ACTION FOR FRAUDULENT
        INDUCEMENT SHOULD BE DISMISSED AS SAME IS
        REDUNDANT OF THE BREACH OF CONTRACT CLAIM
        AND, IN ANY EVENT, FAILS TO STATE A CLAIM FOR
        FRAUD WITH PARTICULARITY .................................... 8

    A.    The Fraud Claim is Redundant of the Breach of Contract Claim ....... 8

    B.    In any Event, The Claim Fails to State A Claim For Fraud With The
           Required Particularity ......................................... 9

POINT III

THE THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE
SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY
CONDUCT DIRECTED AT A THIRD PARTY, FAILS TO ALLEGE
CRIMINAL OR TORTIOUS CONDUCT, AND IS REDUNDANT OF
BREACH OF CONTRACT CLAIM ................................. 10

A.    The Complaint Fails To Allege Any Conduct Directed At
      A Third Party ............................................. 10

B.    Complaint Fails to Allege Criminal Conduct Or Tortious
      Conduct Independent of the "Breach" of Contract Claim ............ 12

POINT IV

THE FOURTH CAUSE OF ACTION FOR ALLEGED CONVERSION
OF MONIES VOLUNTARILY PAID UNDER THE AGREEMENT
MUST BE DISMISSED ......................................... 13

POINT V

THE SIXTH CAUSE OF ACTION FOR INDEMNIFICATION-
CONTRIBUTION CLAIM IS PREMATURE AND REDUNDANT
OF BREACH OF CONTRACT CLAIMS AND MUST BE DISMISSED ..... 14

POINT VI

THE SEVENTH CAUSE OF ACTION FOR DECLARATORY
JUDGMENT TO PIERCE THE CORPORATE VEIL OF HSS
SHOULD BE DISMISSED ....................................... 16

POINT VII

THE PUNITIVE DAMAGES AND ATTORNEYS' FEES CLAIMS
SHOULD BE DISMISSED ....................................... 20

CONCLUSION ............................................... 20

# TABLE OF AUTHORITIES

*AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. Partnership,*
6 F.3d 867 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bay Ridge Air Rights, Inc. v. State,* 57 A.D.2d 237,
394 N.Y.S.2d 464 (3d Dep't 1977)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bedford Affiliates v. Sills,* 156 F.3d 416, 431 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . 16

*Bell Atl. Corp. v. Twobly,* 127 S.Ct 1955, 164-165 (2007) . . . . . . . . . . . . . . . . . . . . . . 6,7,18

*Blimpie Int', Inc. v. Blimpie of the Keys,* 371 F.Supp2d. 469, 470-71 (S.D.N.Y. 2005) . . . . . . . 7

*Board of Educ. of Hudson City v. School Dist. Sargent, Webster,*
*Creashak & Foley,* 71 N.Y.2d 21, 28, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987) . . . . . . . . . 14

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
98 F.3d 13, 19-20 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Carvel Corp. v. Noonan,*3 N.Y.3d 182, 192, 785 N.Y.S.2d 359, 363.-64 (2004) . . . . . . 11, 12, 13

*Clark-Fitzpatrick. Inc. v. Long Island R.R. Co.,*70 N.Y.2d 382,
516 N.E.2d 190, 193-94, 521 N.Y.S.2d 653 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Conley v. Gibson, 355 U.S. 41 (1957)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*County of Chatauqua,* 195 A.D.2d 1021, 600 N.Y.S.2d 585(4th Dept. 1993). . . . . . . . . . . . . 14

*Cresser v. American Tobacco Co.,* 174 Misc.2d 1
662 N.Y.S.2d 374, 377 (N.Y.Sup.Ct.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18

*D'Ambrosio v. Engel,* 292 A.D.2d 564, 741 N.Y.S.2d 42 (2 Dept 2002)
lv. to appeal denied, 99 N.Y.2d, 753 N.Y.S.2d 806, 783 N.E.2d 896 (2002) . . . . . . . . . . . . . . 14

*EED Holdings v. Palmer Johnson Acquisition Corp.,*
228 F.R.D.508 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir.1997) . . . . . . . . . . . . . . . 17

*Gross v. Empire Healthchoice Assurance, Inc.,* 2006 N.Y. Misc.
2006 WL 358474 (Sup. Ct. N.Y. Co. May 18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*IntelliSec v. Firecom, Inc.*, 2001 WL 218940 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Lawrence v. Union of Orthodox Jewish Congregations of Am.,*
32 A.D.3d 304, 304, 820 N.Y.S.2d 60, 60-61 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lawrence Dev. Corp. V. Jobin Waterproofing, Inc.,* 167 A.D.2d 988,
562 N.Y.S.2d 902-903 (4th Dept. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*MBL Life Assur. Corporation v. 555 Realty Co.,*
240 A.D.2d 375, 658 N.Y.S.2d 122 (2d Dept. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McDarren v. Marvel Entertainment Group, Inc.,* 1995 WL 214482 (S.D.N.Y. 1995) . . . . . . . 20

*M.J. & K. Co., Inc. v. Matthew Bender & Co,*220 A.D.2d 488, 490,
631 N.Y.S.2d 938, 940 (2d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . 7,9

Monaghan v. SZS 33 Assoc., L.P., 73 F.3d 1276, 1284 (2d Cir.1996) . . . . . . . . . . . . . . . . . . 16

*Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996) . . . . . . . 7

*PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.,*
2003 WL 22118977 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rother v. Richest,* 270 A.D.2d 760, 705 N.Y.S. 115, 117-118 (2d Dept. 2000) . . . . . . . . . . . . 14

*State v. Syracuse Rigging Co.,* 249 A.D.2d 758, 760, 671 N.Y.S.2d 801 (3d Dep't 1998) . . . . . 15

*Telecom Int'l America, Ltd. v. AT&T Corp.,* 280 F.3d 175, 196 (2d Cir. 2001) . . . . . . . . . . . . . 9

*Topps Co., Inc. v. Cadbury Stani,* F.Supp.2d 250 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . 20

*Thrift Drug, Inc. v. Universal Prescription Adm'rs.,* 131 F.3d 95, 98 (2d Cir.1997) . . . . . . . . 17

*Triemer v. Bobsan Corp.,* 70 F.Supp.2d 375 (S.D.N.Y.,1999) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*U.S. Fidelity Guar. Co. v. Braspetro Oil Serv. Co.,* 369 F.3d 34 (2nd Cir. 2004). . . . . . . . . . . . 20

*U.S. v. Funds Held in the Name or for the Benefit of Wetterer,*
210 F.3d 96, 109 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wall v. CSX Transp., Inc.,* 471 F.3d 410 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
933 F.2d 131, 138 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **STATUTES:**

Fed.R.Civ.P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed.R.Civ.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,16

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

Defendants Homeland Security Strategies, Inc. ("HSS"), Security Intelligence Technologies, Inc. ("SIT"), Ben Jamil ("Jamil") and Chris R. Decker ("Decker")(collectively, the "Defendants") respectfully submit this motion to dismiss the Second, Third, Fourth, Sixth and Seventh Causes of Action, all claims for attorneys' fees and all claims for punitive damages of the Complaint filed by the plaintiff, The Armoured Group, LLC ("Plaintiff" or "TAG"), all rooted in an alleged breach of a written Agreement ("Agreement") between Defendant HSS and Plaintiff <u>only</u>.

The Court should reject Plaintiff's overreaching attempt to convert its contractual claim against <u>HSS</u> into a host of redundant, conclusory and facially deficient "tort" claims, alleging: (a) "fraudulent inducement" against HSS' Officers for stating that HSS "could and would" perform under the Agreement; (b) "conversion" of monies voluntarily paid by Plaintiff to HSS pursuant to the Agreement and alleged to be required to be returned by the terms thereof; (c) "tortious interference" with alleged contracts between Plaintiff's and its Client arising entirely out of an alleged breach of the Agreement; and (d) premature equitable "indemnification/contribution" claims seeking consequential damages "if TAG" is ever found liable. All of these claims must be dismissed because they fail to allege any extraneous circumstances giving rise to a duty distinct from the alleged obligations of the Agreement and are deficient as a matter of well settled New York law.

Likewise, Plaintiff's Seventh Cause of Action to pierce the corporate veil of HSS in order to assert claims against Defendants SIT and Jamil must be dismissed. This claim fails to allege facts showing how the Defendants' purported domination of HSS was the *cause* of Plaintiff's alleged contract damages, and lacks the factual particularity required to support a piercing claim based upon an allegation of "fraud". Plaintiff's conclusory and formulaic claims demonstrate why New York courts are "extremely reluctant" to pierce the corporate veil absent "extraordinary circumstances."

In short, Plaintiff's overreaching attempt to convert a breach of contract claim against HSS into a myriad of untenable tort claims and claims against improper defendants should be dismissed.

## STATEMENT OF FACTS[1]

**A.    The Plaintiff And Defendant, HSS, Enter Into An Agreement And No Other Defendants Are Alleged To Be Parties To The Agreement.**

The Armoured Group, LLC ("TAG" or "Plaintiff") is an Arizona limited liability company which provides armoring services. (Complaint at ¶8). The Defendant Homeland Security Strategies, Inc. ("HSS") is a Delaware corporation with a principal place of business in New York that has wide repertoire of surveillance, counter-terrorism and electronic jamming among other products and services. (Complaint at ¶9).

In or around April 2006, TAG entered into an agreement with the HSS for the purchase and installation of four customized BombJammers™ ("Jammers")(the "Agreement")(Complaint at ¶1). A copy of the alleged[2] Agreement is annexed at Exhibit A to the Complaint.  The subject of the Agreement between TAG and HSS centered around the ". . . Installation of the four Jammers in Purchaser's vehicles" (See Complaint at ¶23).  The purpose of the Jammers is to defend against Remotely Controlled Improvised Explosive Devices, which utilize the radio transmitters to initiate the detonation of bombs (Complaint at ¶15).

The Complaint alleges that HSS is a wholly owned subsidiary of Security Intelligence Technologies, Inc. ("SIT"), a company that designs, assembles, markets and sells security products

---

[1]For purposes of this motion  alone, the Defendants assume that the facts alleged in the Plaintiff's Complaint dated October 31, 2007 ("Complaint") are true.  Notwithstanding the foregoing, the Defendants reserve the right to contest and/or refute the Plaintiff's allegations on the merits at a later date.

[2]Notably, the Agreement annexed to the Complaint is not signed by Plaintiff.

for use by military, law enforcement and security personnel in the public and private sectors (Complaint at ¶9,10). At the same time, the Complaint inconsistently alleges, upon information and belief, that Ben Jamil ("Jamil") is the majority shareholder of HSS, and, also, that Jamil and Decker are officers and directors of HSS and SIT. (Complain at ¶¶11, 12).

However, no Defendant other than HSS is alleged to be a party to the Agreement with the Plaintiff. Indeed, the Agreement annexed to the Complaint provides in pertinent part as follows: "This Agreement ("Agreement") made on April 10, 2006 [is] By and Between: 1. Homeland Securities Strategies, Inc. . . . and 2. The Armored Group LLC" (Complaint at Exhibit A, Page 3 of 8). In addition, no other Defendants are mentioned in any fashion in the Agreement itself, except that Defendant, "Chris R. Decker", allegedly signs the Agreement "On behalf of HSS" in his capacity as "Chief Financial Officer" (Complaint at Exhibit A, Page 7 of 8).

**B.     Agreement Annexed At Exhibit A Contains Indicia that HSS Is A Distinct Entity.**

The face of the Agreement annexed at Exhibit A contains a distinct "HSS Homeland Security Strategies, Inc." logo which appears in the upper left corner of each page of the agreement. (Complaint at Exhibit A). In addition, the footer of each page of the Agreement states as follows "Confidential Copyright © 2005 *Homeland Security Strategies, Inc.* All rights reserved. No part of this document may be reproduced or transmitted in any form or by any means *without the permission in writing from HSS*" (Complaint at Exhibit A)(emphasis added). Furthermore, the Agreement contains detailed disclaimers concerning requirements of the United States Department of State, Code of Federal Regulations and provides that "all sales and shipping are subject to license approval by the US Department of State". (Exhibit A, Page 2).

The Agreement contains a website address: www.bombjammer.com; telephone contact

3

information, business office addresses, as well as distinct "Homeland Security Strategies, Inc."

bank account information. (Complaint at Exhibit A, Pages 2, 6 and 8).

### C. Plaintiff Electronically Wires Advanced Payment Pursuant To The Agreement To HSS Separate Bank Account

The Agreement Invoice at Page 8 of 8 of the Agreement appears to be initialed by "CRD" and

provides for a $340,000 quantity discount if the offer is accepted by April 16, 2006. It is unclear

based upon the submissions whether this $340,000 discount offer (and discounted total purchase

price of $860,000) was accepted in a timely fashion as the Agreement submitted lacks a signature

of the Plaintiff. (See Complaint at Exhibit A).

Plaintiff alleges that Plaintiff made an advance payment of $450,000 against the total

purchase price of $860,000, upon execution of the Agreement. Plaintiff alleges that "(o)n or about

April 14, 2006, pursuant to the payment terms of the Agreement and at the urging of its Client, TAG

made an advance payment of $450,000 *to HSS* via electronic wire transfer". (Complaint at ¶1,

26)(emphasis added). *Further, the alleged agreement annexed to the Complaint provides distinct*

*bank account wiring instruction information "For the account of - Homeland Security Strategies,*

*Inc., 145 Hugenot Street, New Rochelle, New York"* (Complaint at Exhibit A, at Page 6 of 8 and

Page 7 of 8)(emphasis added).

No other Defendants are alleged to have received any payments from the Plaintiff pursuant

to the Agreement, nor are any Defendants alleged to be payees under the Agreement.

### D. Plaintiff Alleges That Defendant HSS Failed To Perform Under The Agreement

The Complaint alleges that "(i)n violation of the *Agreement, HSS* did not complete, deliver

or install any of the four Jammers by the October 14, 2006 deadline". (Complaint at ¶4)(emphasis

added). The Complaint further alleges that "*HSS* failed and/or refused to return TAG's advance

4

payment in the amount of $450,000 in breach of the *Agreement*" and cites provisions of Agreement allegedly concerning reimbursement of monies in the event of a failure to deliver. (Complaint at ¶32, 52, 24)(emphasis added). The Complaint further alleges that a pricing dispute arose (i.e. Defendant HSS may not have been willing to give the entirety of the $340,000 discount in the invoice or other dispute arose) and that Defendant would not perform without an additional $250,000 (Complaint at ¶3). In addition, the Complaint alleges that "as a result of *HSS' breach of its agreement* with *TAG*, TAG has been unable to complete its contract with its Client and therefore incurred *consequential damages*." (Complaint at ¶28)(emphasis added).

**E.    Alleged Breach of the Agreement Between HSS And TAG Is The Subject of The Entire Complaint**

In addition to the First Cause of Action for Breach of Contract, Plaintiff has alleged causes of action sounding in Fraudulent Inducement, Tortious Interference, Conversion, Indemnity/Contribution and Declaratory Judgment To Pierce the Corporate Veil of HSS as a result of an alleged "fraud" . However, each and every one of the foregoing allegations concerning the alleged breach by HSS of the Agreement between the Plaintiff TAG and HSS are specifically repeated an realleged in each cause of action in the Complaint, along with a host of contract related allegations (Complaint at ¶¶1, 26, 29, 32, 34, 46, 51, 56, 61, 65 and 1-33)

Moreover, as detailed in the arguments below, each of the so-called tort causes of action is replete with allegations explicitly rooted in the alleged First Cause of Action for Breach of Contract, including without limitation, the following:

(i)    Defendant HSS allegedly breached and/or fails to perform under the Agreement, including alleged failure to deliver and/or install Jammers (Complaint at ¶4, 6, 18, 26, 28, 33, 35-36, 47,48, 49, 52, 59, 62, 64, 70, 71);

5

(ii)    Plaintiffs allegedly paid an advance payment to HSS provided for under the Agreement that should allegedly be returned pursuant to the terms of the Agreement (Complaint at ¶¶1, 5, 24, 26, 32, 52);

(iii)   A pricing dispute of $250,000 (potentially related to the $340,000 discount) arose (Complaint at ¶5, 26);

(iv)   Plaintiff allegedly sustained consequential damages and/or damages concerning its Client contracts as a result of the breach of the Agreement (Complaint at ¶¶ 6, 7, 28, 49, 62-64); and

(v)    One or more Corporate Officers of HSS "misrepresented" that HSS "could or would" perform under the *Agreement* and "(b)y *fraudulently* misrepresenting HSS' ability to perform *under the terms of the Agreement*, Jamil committed *a fraud* under the guise of the corporate form and *caused* TAG to enter into an *agreement* that it would not have otherwise. (See Complaint at ¶18, 35, 71; all of which are also included in alleged "failure to perform" above ).

## ARGUMENT

### POINT I

**RECENT SUPREME COURT PRECEDENT REQUIRES DISMISSAL OF CLAIMS THAT ARE MERELY "CONCEIVABLE", BUT WHICH ARE NOT SUFFICIENTLY AMPLIFIED TO MAKE SAME "PLAUSIBLE" ON THEIR FACE**

The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) a motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twobly, 127 S.Ct 1955, 164-165 (2007)(citations omitted).

The Supreme Court in Bell Atlantic, Id. at 164-169, also abandoned reliance on the oft-cited

6

line from <u>Conley v. Gibson</u> that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" 355 U.S. 41, 45-46 (1957). As the Court explained, a literal application of <u>Conley</u> 's "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Bell Atl.</u>, 127 S.Ct. at 1968.

Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief *above the speculative level* ... [,]" <u>Id.</u> at 1965 and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" <u>Id.</u> at 1969. Plaintiff must allege "*enough facts to state a claim to relief that is plausible on its face.*" <u>Id.</u> at 1974. If it "*ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed.*" <u>Id.</u> (emphasis added).

When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the complaint, documents attached to the complaint, and documents incorporated into the complaint via reference. <u>See</u> <u>Newman & Schwartz v. Asplundh Tree Expert Co.</u>, 102 F.3d 660, 662 (2d Cir. 1996)(citation omitted). The Court may accept as true Plaintiff's non-conclusory allegations and draw all reasonable inferences in Plaintiff's favor. <u>See</u> <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993); <u>Blimpie Int', Inc. v. Blimpie of the Keys</u>, 371 F.Supp2d. 469, 470-71 (S.D.N.Y. 2005). Under these standards, the Second, Third, Fourth, Sixth and Seventh Causes of Action, together with all claims for punitive damages and attorneys' fees, must be dismissed.

7

## POINT II

### THE SECOND CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT SHOULD BE DISMISSED AS SAME IS REDUNDANT OF THE BREACH OF CONTRACT CLAIM AND, IN ANY EVENT, FAILS TO STATE A CLAIM FOR FRAUD WITH PARTICULARITY

**A.    The Fraud Claim is Redundant of the Breach of Contract Claim**

The gravamen of Plaintiff's Second Cause of Action for fraudulent inducement is that Defendants misrepresented that "Defendants, including Jamil and Decker personally and individually, made false misrepresentations of material fact in order to induce TAG to agree to its terms. Specifically, the Defendants represented to TAG that Defendants *could and would* obtain and install the four Jammers [subject of the alleged[3] written Agreement attached to the Complaint] and *could and would* do so in a timely fashion". Further, the Complaint alleges that "(t)hese representations were false", and that "Defendants knew that the representations were false" (Complaint at ¶¶35,36, 38)(emphasis added).

In short, Plaintiffs merely alleges that the Defendants represented that HSS "could and would perform" under the Agreement but failed to do so. At worst, Plaintiff alleges that HSS never had any intention of performing under the contract and that the Defendants misrepresented that it could do so. However, even accepted as true, these allegations utterly fail as a matter of well settled New York law. See Wall v. CSX Transp., Inc., 471 F.3d 410 (2d Cir. 2006) (Under New York law, general allegations that a defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim).

Plaintiffs fraud claim is also barred because it is merely duplicative of his breach of contract

---

[3]Again, the Agreement annexed to the Complaint is not signed by Plaintiff.

8

claim. Under New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract. Telecom Int'l America, Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) ("Under New York law, 'where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promise spelled out in the contract..., the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.")(citation omitted); Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19-20 (2d Cir. 1996).

Not a single one of the conclusory statements alleged in the Complaint - even if they were in fact made - can be read as an inducement for plaintiff to do anything other than his contractual obligations. Inasmuch as the fraud cause of action is entirely rooted in plaintiff's contract claim, it clearly does not set forth a separate claim upon which relief may be granted and must be dismissed.

**B.    In any Event, The Claim Fails to State A Claim For Fraud With The Required Particularity**

Rule 9(b) of the Federal Rules of Civil Procedure provides as follows: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Second Circuit "has reach 9(b) to require that a complaint [alleging fraud' '(1)specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" Rombach v. Chang, 355 F.3d 164, 170 (2d Cir.2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)).

9

Here, there are merely a series of utterly conclusory allegations that Defendants misrepresented that HSS "could and would" perform under the parties Agreement and that defendants "knew" these allegations to be false without any greater specificity. (See e.g. Compl. at ¶35). Moreover, the allegations of the so-called "misrepresentations" concerning alleged non-performance in the Second Cause of Action are all rooted in the alleged contractual obligation under the Agreement regarding the "Installation of the four Jammers in Purchaser's vehicles" and the (See Complaint at ¶23, Exhibit A at Page 6).

No other factual description of the purported misrepresentations/fraudulent acts is provided. No description is provided to detail how the alleged officers of HSS were acting "personally and individually"(Complaint at ¶¶11, 12, 35). No date is provided when the alleged "misrepresentations" and "*fraudulent* acts" occurred, nor are any additional substantive facts provided. No intent to defraud or scienter can be shown. Accordingly, even if the Court were to disregard the redundancy of these claims with the First Cause of Action for Breach of Contract, these conclusory allegations simply lack the required particularity required to state a cause of action for fraudulent inducement. Accordingly, the redundant, conclusory and deficient Second Cause of Action should be dismissed.

## POINT III

### THE THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY CONDUCT DIRECTED AT A THIRD PARTY, FAILS TO ALLEGE CRIMINAL OR TORTIOUS CONDUCT, AND IS REDUNDANT OF BREACH OF CONTRACT CLAIM

#### A.    The Complaint Fails To Allege Any Conduct Directed At A Third Party

Generally, "[t]o establish a claim based on tortious interference with business relations, a plaintiff must show (1) existence of a business relation with a third party, (2) Defendant's interference with the relation by use of dishonest, unfair or improper means, and (3) plaintiff

sustained damages." <u>Gross v. Empire Healthchoice Assurance, Inc.</u>, 2006 N.Y. Misc.2006 WL 1358474 at 7 (Sup. Ct. N.Y. Co. May 18, 2006) (citing <u>M.J. & K. Co., Inc. v. Matthew Bender & Co.</u>, 220 A.D.2d 488, 490, 631 N.Y.S.2d 938, 940 (2d Dep't 1995)).

In addition, it is well settled that, "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but *at the party with which the plaintiff has or seeks to have a relationship.*" <u>Carvel Corp. v. Noonan</u>, 3 N.Y.3d 182, 192, 818 N.E.2d 1100, 1104-05, 785 N.Y.S.2d 359, 363.-64 (2004) (noting that "[w]hile economic pressure brought to bear by one contracting party on the other may, on rare occasions, be tortious, it cannot constitute the tort of interference with economic relations") (internal citations omitted)(emphasis added); <u>See</u> <u>Gross</u>, 2006 Misc.WL 1358474 at 7 ("[T]he complaint does not allege that defendants directly interfered with plaintiffs' patients; instead, it alleges that defendants' actions were directly at plaintiffs themselves rather than their patients. Therefore, the motions to dismiss this claim [for tortious interference with business relations] are granted[.] ") (internal citations omitted).

Here, the Plaintiff contends that: "Defendants were aware that TAG had an existing contract that relied upon compliance with the terms of the Agreement [between HSS and Plaintiff]" (Compl at ¶47)(emphasis added). Tellingly, Plaintiff further alleges that "as a direct and proximate result of the Defendants' *breach of the Agreement* [between HSS and Plaintiff], TAG has sustained *consequential damages.* . .and its relationship has been irreparably damages with its existing Client" (Complaint at ¶51)(emphasis added). This clearly indicates relief related to a contractual claim. *However, nowhere in the Complaint does the Plaintiff allege that Defendants directed any conduct* <u>*at the Clients of the Plaintiff in any fashion.*</u> For this reason alone, Plaintiff fails to allege a viable claim for tortious interference with business relations.

11

**B.    Complaint Fails to Allege Criminal Conduct Or Tortious Conduct Independent of the "Breach" of Contract Claim**

The Complaint fails to allege that Defendants engaged in any "criminal or tortious"conduct during its purported interference with the Plaintiff's contractual commitments with its clients, but, rather, alleges that there was a "breach" of the Agreement.

In Carvel, the New York Court of Appeals explained this element:

> [A]s a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently culpable "to create liability for interference with prospective contracts or other nonbinding economic relations. . .An exception has been recognized where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs.

Carvel,3 N.Y.3d at 190, 818 N.E.2d at 1103, 785 N.Y.S.2d at 362 (internal quotation marks omitted)(emphasis added); see also Lawrence v. Union of Orthodox Jewish Congregations of Am.,32 A.D.3d 304, 304, 820 N.Y.S.2d 60, 60-61 (1st Dep't 2006).

Here, the Complaint does not allege any conduct by the Defendants that could possibly be described as criminal or even tortious. Nor are there any factual allegations that the Defendants conduct was "for the sole purpose of inflicting intentional harm on" Plaintiff. Rather, the second cause of action alleges that as a result of a "breach of the Agreement" the Plaintiff was harmed. Despite the attempt to couch the alleged "breach of the Agreement" as being "intentional" (See Compl. at ¶51), there is no criminal conduct or an allegation of an independent duty other than the obligations under the agreement itself.

Rather, the crux of Plaintiff's Complaint is that the Defendant HSS breached the Agreement. It is well-settled, however, that a breach of contract alone does not constitute an independent tort, let alone a crime. See Clark-Fitzpatrick. Inc. v. Long Island R.R. Co.,70 N.Y.2d 382, 389, 516 N.E.2d 190, 193-94, 521 N.Y.S.2d 653, 656-57 (1987) ("It is a well established

principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."). Thus, in Carvel,3 N.Y.3d at 192, 818 N.E.2d at 1105, 785 N.Y.S.2d at 364, the Court rejected a claim for tortious interference with business relations on the grounds that the "crux of the claim -- that defendant breached its contracts with plaintiffs -- "should be determined by the contract between the parties, not by courts or juries seeking after the fact to devise a code of conduct."

Here, Plaintiff simply does not allege any duty independent of the contract. Accordingly, the Court should dismiss the Third Cause of Action along with a host of other redundant claims as set forth below.

**POINT IV**

**THE FOURTH CAUSE OF ACTION FOR ALLEGED
CONVERSION OF MONIES VOLUNTARILY PAID
UNDER THE AGREEMENT MUST BE DISMISSED**

As yet another example of a redundant and overreaching "tort" claim, Plaintiff alleges a claim for "conversion" concerning an "advance payment of $450,000 against the total purchase price" paid expressly "(p)ursuant to the terms of the Agreement", as reflected in the *very first* allegation of the Complaint. (Complaint at ¶1)(emphasis added). Yet, "it is settled . . that a claim of conversion cannot be predicated on a mere breach of contract". MBL Life Assur. Corporation v. 555 Realty Co., 240 A.D.2d 375, 658 N.Y.S.2d 122 (2d Dept. 1997)(citations omitted)(held that "because the plaintiff failed to submit evidence demonstrating a wrong independent from the contract claim, the defendants are entitled to dismissal of cause of action . . .for conversion"); See also Clark-Fitzpatrick. Inc. v. Long Island R.R. Co., and Point III supra.

Notably, the so-called "conversion" allegation is previously asserted in substantially identical fashion as part of the First Cause of Action for breach of contract which alleges that "HSS

13

failed and/or refused to return Tag's *advance payment* in the amount of $450,000 *in breach of the Agreement*." (Complaint at ¶32)(emphasis added). The foregoing breach of contract allegations are even repeated directly in the "conversion" claim itself. (See Complaint at ¶51).

Plaintiff attempts to recast this contractual claim into "conversion: by alleging that "HSS wrongfully. . .converted to its use, TAG's advanced payment. . .", despite the fact that Plaintiff voluntarily paid these sums under the specific terms of the Agreement and claims return thereof pursuant to a specific term of that same Agreement (Complaint at ¶¶1, 22, <u>24</u>, 52, 53).

However, the failure to return a deposit provided for under an agreement does not give rise to a distinct claim for conversion under New York law, but, rather constitutes a claim for breach of contract. See <u>D'Ambrosio v. Engel</u>, 292 A.D.2d 564, 741 N.Y.S.2d 42 (2 Dept 2002) lv. to appeal denied, 99 N.Y.2d, 753 N.Y.S.2d 806, 783 N.E.2d 896 (2002) Accordingly, this redundant contract claim recast as "conversion" must be dismissed.

## POINT V

### THE SIXTH CAUSE OF ACTION FOR INDEMNIFICATION/ CONTRIBUTION IS PREMATURE AND REDUNDANT OF BREACH OF CONTRACT CLAIMS AND MUST BE DISMISSED

The indemnification/contribution claims must all fall as yet another overreaching redundant claim relating to the underlying claim for breach of contract.  Under New York law, "it is firmly established that contribution is not available when the underlying claim is for breach of contract" <u>PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.</u>, 2003 WL 22118977 (S.D.N.Y.,2003)(citing <u>Board of Educ. of Hudson City v. School Dist. Sargent, Webster, Creashak & Foley</u>, 71 N.Y.2d 21, 28, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987); <u>Rother v. Richest</u>, 270 A.D.2d 760, 705 N.Y.S. 115, 117-118 (2d Dept. 2000); <u>County of Chatauqua</u>, 195 A.D.2d 1021, 600 N.Y.S.2d 585

14

(4th Dept 1993); Lawrence Dev. Corp. v. Jobin Waterproofing, Inc., 167 A.D.2d 988, 562 N.Y.S.2d
902 (4th Dept. 1990)).

Here, Plaintiff has on numerous occasions alleged that they are entitled to "consequential
damages" arising from the alleged breach of contract and potential damages concerning the Client.
(See Complaint at ¶¶ 6, 7, 28, 49, 62-64). Plaintiff merely makes a redundant attempt to improperly
recast these contract claims as a tort and potentially conclusory claims against all Defendants[4].

*Moreover, the claims for indemnification/contribution are not yet ripe and are speculative
on their face as the Complaint concedes that no damages have actually been suffered by the
Plaintiff arising from a Client claim who alleges only that Defendants should be liable "if TAG
is ever found liable to its Client"* (Complaint at ¶64)(emphasis added). A case is not ripe if it
"involves uncertain and contingent future events that may not occur as anticipated, or indeed may
not occur at all." AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. Partnership, 6 F.3d 867,
872 (2d Cir.1993). Likewise, New York law clearly provides that a claim for indemnification or
contribution is premature where there has been neither entry of judgment nor payment. IntelliSec
v. Firecom, Inc., 2001 WL 218940 (E.D.N.Y.)(citing State v. Syracuse Rigging Co., 249 A.D.2d
758, 760, 671 N.Y.S.2d 801, 803 (3d Dep't 1998); Bay Ridge Air Rights, Inc. v. State, 57 A.D.2d
237, 394 N.Y.S.2d 464, 466 (3d Dep't 1977), aff'd, 44 N.Y.2d 49, 404 N.Y.S.2d 73 (1978). In
short, this speculative claim should be dismissed.

Plaintiffs also fail to state a valid claim for indemnification because Plaintiff merely alleges

---

[4] Without little or no explanation, the Complaint at various point refers to HSS and then to
all Defendants, despite that the Agreement and alleged obligations are properly related to HSS
alone. Accordingly, to be clear where the Complaint is not, this motion seeks dismissal of all
claims against Defendants Jamil, Decker and SIT.

that Defendants may be only partially at fault, alleging: "Defendants are responsible in whole *or in part* for such injury or damage" (Complaint at ¶63). However, "Indemnification under New York law, whether categorized as implied or equitable is not available where the party seeking indemnification was "partially at fault" or "responsible to any degree." See <u>IntelliSec v. Firecom, Inc.</u>, 2001 WL 218940 (E.D.N.Y.)(citing <u>Monaghan v. SZS 33 Assoc.</u>, L.P., 73 F.3d 1276, 1284 (2d Cir.1996)).

Moreover, these allegations are deficient in the description of Plaintiff's obligations to its undisclosed Client, the third party obligations delegated to HSS, and particularly how/whether any obligations of the HSS Agreement were assumed by its officers or by SIT.

**POINT VI**

**THE SEVENTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT TO PIERCE THE CORPORATE VEIL OF HSS SHOULD BE DISMISSED**

In New York there is a presumption against piercing the corporate veil. <u>U.S. v. Funds Held in the Name or for the Benefit of Wetterer</u>, 210 F.3d 96, 109 (2d Cir. 2000) ("under New York law, courts must be extremely reluctant to pierce the corporate veil ...")(emphasis added); <u>See, also, Murray v. Miner</u>, 74 F.3d 402, 404 (2d Cir. 1996)("Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil")(emphasis added); <u>McDarren v. Marvel Entertainment Group, Inc.</u>, 1995 WL 214482 (S.D.N.Y. 1995).

In this District, "where a veil piercing claim is based on allegations of fraud, 'the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined.'" <u>EED Holdings v. Palmer Johnson Acquisition Corp.</u>, 228 F.R.D.508 (S.D.N.Y. 2005)(citations omitted)(emphasis added). Even in non-fraud claims, the pleading requirements of Federal Rule 8(a) are not satisfied where a piercing claim is based upon "conclusory" allegations. Id. at 512.

16

To pierce the corporate veil in this case, the Court must find not only that the Defendants Jamil and SIT: (1) exercised domination and control over the corporate defendant; but, (2) that this control was the cause of plaintiff's injury. Bedford Affiliates v. Sills, 156 F.3d 416, 431 (2d Cir.1998); citing, Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir.1991) (explaining that under New York law, the use of control to commit a wrong causing loss to a party is key to piercing the corporate veil). Recent Second Circuit precedent, applying New York law makes it abundantly clear that domination by the individual, alone, will not be sufficient to pierce the veil. There must be, in addition, a direct nexus between that control and the loss to the plaintiff. Bedford Affiliates v. Sills, 156 F.3d 416, 431 (2d Cir. 1998); Thrift Drug, Inc. v. Universal Prescription Adm'rs., 131 F.3d 95, 98 (2d Cir.1997); Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir.1997) ("[T]he element of domination and control never was considered to be sufficient of itself to justify the piercing of a corporate veil.").

Here, the Seventh Cause of Action is explicitly rooted in utterly conclusory allegations of "fraud" and, as such must be plead with particularity. Indeed, Plaintiff alleges in woefully deficient fashion that: "(b)y fraudulently misrepresenting HSS' ability to perform under the terms of the Agreement, Jamil committed a fraud under the guise of the corporate form and caused TAG to enter into an agreement that it would not have otherwise." (Complaint at ¶71)(emphasis added).

The purported support for these feeble allegations of "fraud" are a series of allegations containing nothing more than conclusions and utterly formulaic labels made "upon information and belief" (See Complaint at 66-70). However, allegations in piercing the corporate veil claims made "upon information and belief" are "insufficient to withstand a motion to dismiss." See Triemer v. Bobsan Corp., 70 F.Supp.2d 375 (S.D.N.Y.,1999); See also Cresser v. American

17

Tobacco Co., 174 Misc.2d 1, 5, 662 N.Y.S.2d 374, 377 (N.Y.Sup.Ct.1997) ("Recasting the ...

criteria for piercing the corporate veil and framing them as allegations in the complaint does not,

without more, sustain a cause of action....").

Tellingly, these labels-allegations are devoid of any factual substance and recite labels and

conclusions as if by rote (See Complaint at ¶¶67-72[5]). However, the United States Supreme Court

has made clear that the recitation of formulaic labels is insufficient to withstand a motion to

dismiss. See Bell Atl. Corp. v. Twobly, 127 S. Ct. at 164-165 ( Supreme Court held: "a plaintiff's

obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

By contrast, the Complaint and the Agreement annexed thereto, offers a factual account that

seemingly contradicts the formulaic labels offered in the Seventh Cause of Action. The Complaint

and Exhibit A paints a factual picture of a distinct entity that is a going concern engaged in a

business transaction subject of corporate contractual dispute. Indeed, the Agreement makes clear

that same is between HSS and Plaintiff only and purports that same is made "on behalf of HSS"

by its "Chief Financial Officer". Moreover, the *Agreement contains wiring instructions with a*

*separate bank account for HSS and Plaintiff alleges that funds were wired to HSS only.*

Furthermore, the Agreement contains a distinct corporate logo for HSS on each page thereof, seeks

---

[5](Upon information and belief, SIT and Jamil controlled . . HSS without corporate formalities";
"Upon information and belief, HSS was, from its inception, a highly undercapitalized corporation";
"Upon information and belief, SIT and Jamil diverted the corporate funds of HSS for SIT's corporate
and Jamil's personal uses"; that ""Upon information and belief, SIT and Jamil caused HSS to have
insufficient funds to complete performance", etc.). *Moreover, note that Plaintiff cannot even*
*consistently allege who is the shareolder of HSS, that is, whether HSS is "wholly" owned by SIT or*
*whether Jamil is "majority" owner (Complaint at ¶¶11, 12). As such domination cannot be shown.*

18

protection for both copyrights and trademarks, contains disclaimers as to defense industry statutes, requires confidentiality absent "permission in writing from HSS", and even contains a website address for the HSS product being purchased (www.bombjammers.com).

In addition, while alleging in baldly conclusory fashion that "*upon information and belief*, HSS was, from its inception, a highly undercapitalized corporation", Plaintiff readily concedes that "HSS. . .has a wide repertoire of surveillance, counter-terrorism and electronic jamming among other products and services". (Complaint at ¶9. Accordingly, Plaintiff asks the Court to disregard the facts of its own Complaint in favor of speculation and formulaic labels.

Moreover, like the Second Cause of Action for fraudulent inducement, these "fraud" claims are nothing more than a thinly veiled attempt to recast a breach of contract claim by alleging that Defendants represented that Defendant HSS "would" perform under the Agreement. As set forth above in detail Point II and Point III supra., these conclusory allegations of purported "fraud" arising out of the same facts as an alleged breach of contract do not give rise to an independent tort claim and cannot be sustained as a matter of New York law.

Finally, and critically, the purported representation by an officer of the Corporation that HSS had "the ability to perform" does not in any way show that the domination of the entity was the cause of the alleged dispute over whether Plaintiff is entitled to the full $340,000 discount in the agreement. (See Complaint at Exhibit at Page 8). No fraud arose from Plaintiff being simply asked to perform its contractual obligations.

In short, Plaintiff's ephemeral "belief" is not sufficient to disregard the corporate form based upon an utterly conclusory allegation of "fraud". Accordingly, the failure of this Court to dismiss Plaintiff's formulaic, conclusory and overreaching claims would improperly permit

piercing the corporate veil claims wherever an owner allegedly "misrepresents" that her company will perform under an agreement that later fails to do so. Respectfully, this sweeping attempt to disregard the corporate form should not be countenanced by this Court.

**POINT VII**

**PUNITIVE DAMAGE, ATTORNEYS' FEES CLAIMS SHOULD BE DISMISSED**

This matter involves a contractual dispute between sophisticated business entities. Accordingly, the punitive damages sought throughout the Complaint are clearly not permitted for the basic breach of contract claim herein, nor are claims for attorneys' fees under the "American Rule." See, Topps Co., Inc. v. Cadbury Stani, F.Supp.2d 250 (S.D.N.Y. 2005); U.S. Fidelity Guar. Co. v. Braspetro Oil Serv. Co., 369 F.3d 34 (2nd Cir. 2004).

Accordingly, Plaintiff's overreaching attempt to convert a contractual dispute against HSS into a myriad of untenable tort claims and claims against improper defendants in order to obtain speculative relief, punitive damages, attorneys' fees, and personal liability should be rejected.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Second, Third, Fourth, Sixth and Seventh Causes of Action and all claims for punitive damages and attorneys' fees of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: White Plains, New York      Respectfully submitted,
        December 21, 2007           ANDREW GREENE & ASSOCIATES, P.C.

               By:    /s/Thomas C. Landrigan
                      Thomas C. Landrigan (TL-3116)
                      Attorneys for Defendants
                      202 Mamaroneck Avenue
                      White Plains, New York 10602
                      (914) 948-4800

20
