DAVIS & GILBERT LLP
Neal H. Klausner, Esq.
Allie Lin, Esq.
1740 Broadway
New York, New York 10019
(212) 468-4800
nklausner@dglaw.com

CARMAGNOLA & RITARDI, L.L.C.
Steven F. Ritardi, Esq. (*pro hac vice*)
60 Washington Street
Morristown, New Jersey 07960
(973) 267-4445
sritardi@cr-law.net



Attorneys for Plaintiff
THE ARMORED GROUP, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ARMORED GROUP, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>HOMELAND SECURITY STRATEGIES, INC., SECURITY INTELLIGENCE TECHNOLOGIES, INC., BEN JAMIL, and CHRIS R. DECKER,<br><br>Defendants. | 07 Civ. 9694 (LAP) (GWG)<br><br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff The Armored Group, LLC ("Plaintiff" or "TAG"), by its attorneys,

Davis & Gilbert LLP and Carmagnola & Ritardi, L.L.C., for its First Amended Complaint

against defendants Homeland Security Strategies, Inc. ("HSS"), Security Intelligence

Technologies, Inc. ("SIT"), Ben Jamil ("Jamil"), and Chris R. Decker ("Decker") (collectively, the "Defendants"), states as follows:

## NATURE OF THE ACTION

1.    In or around April 2006, TAG, in order to complete a contract with one of its clients (the "Client"), entered into negotiations with HSS for the purchase and installation of four customized BombJammers™ ("Jammers").   HSS, and Jamil and Decker, individually and personally, made several false and misleading representations to TAG to induce it to enter into an agreement with HSS.

2.    On or about April 14, 2006, HSS and TAG entered into an agreement providing that HSS would complete and deliver the four Jammers on or before October 14, 2006 (the "Agreement").

3.    Pursuant to the terms of and upon execution of the Agreement, TAG made an advance payment of $450,000 against the total purchase price of $860,000. TAG was required to pay the remaining balance only after certain conditions precedent occurred, including but not limited to:  (a) the installation of the Jammers by HSS, and (b) the inspection and acceptance of the Jammers by TAG's Client.

4.    Shortly after the parties entered into the Agreement,   Defendants informed TAG that they would not perform under the Agreement unless they were paid an additional $250,000.  The Agreement did not require any such payment.

2

5.    In violation of the Agreement, Defendants did not complete, deliver or install any of the four Jammers by the October 14, 2006 deadline.

6.    Furthermore, Defendants have failed and refused to refund the advance payment made by TAG in the amount of $450,000.

7.    As a result of HSS's breach of its Agreement with TAG, TAG could not complete its contractual obligation to its Client and therefore, suffered consequential damages. Furthermore, TAG's Client has threatened to take action against TAG for not completing its contractual obligation.

8.    By this action, TAG seeks to recover compensatory, consequential and punitive damages it has suffered as a result of Defendants' actions, along with costs, interest and attorneys' fees, and such other and further relief the Court deems proper.

## THE PARTIES

9.    Plaintiff TAG is an Arizona limited liability company with its principal place of business at 5221 North Saddlerock Drive, Phoenix, Arizona 85018. TAG provides armoring services to a variety of clients all over the world.

10.    Defendant HSS is a Delaware corporation, with its principal place of business at 145 Huguenot Street, New Rochelle, New York 10801. HSS is a wholly-owned subsidiary of SIT. HSS purportedly has a repertoire of surveillance, counter-terrorism and electronic jamming among other products and services.

3

11.    Defendant SIT is a Florida corporation, with its principal place of business at 145 Huguenot Street, New Rochelle, New York 10801. SIT is a publicly traded company that purportedly designs, assembles, markets and sells security products for use by military, law enforcement and security personnel in the public and private sectors.

12.    Upon information and belief, Defendant Jamil is, and at all times mentioned herein, has been a resident of New York. Jamil is the Chairman of the Board, President, Chief Executive Officer and majority shareholder of SIT, and upon information and belief, a director and/or officer of HSS.

13.    Upon information and belief, Defendant Decker is, and at all times mentioned herein, has been a resident of New Jersey. Decker is the Chief Financial Officer of HSS and SIT, and a Director of SIT.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, excluding interest and costs.

15.    Venue is proper in this District under 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16.    In or around March 2006, TAG contracted with its Client to build and deliver a number of armored vehicles. The contract called for the vehicles to contain

4

security systems designed to defend against remotely controlled improvised explosive devices, which utilize radio transmitters to initiate the detonation of bombs.

17.    In or around April 2006, TAG, in order to complete the terms its contract with its Client, sought the goods and services of HSS. Specifically, TAG sought to purchase and have four customized Jammers installed in the armored vehicles. A Jammer prevents detonation of an explosive by interfering with the reception of the radio transmission that the bomber initiates to trigger the bomb.

18.    After a TAG representative made initial contact with HSS, TAG and specifically Jamil and Decker entered into negotiations.

19.    TAG explained to Defendants that time was of the essence. Defendants were in direct contact with TAG's Client to discuss the technical specifications of the four Jammers. They knew that TAG was dependent on HSS to deliver the four Jammers in a timely fashion, and that failure to provide the Jammers would endanger TAG's contract with its Client.

20.    In order to induce TAG into entering into the Agreement, Defendants, including Jamil and Decker, personally and individually, represented to TAG that:

- If monies were not immediately wired to HSS, some components of the Jammers would not be available, which would cause a delay in production and an increase in prices;

- HSS had many customers interested in purchasing armored cars and HSS would refer these customers to TAG if TAG entered into this contract with HSS;

- If TAG entered into this contract with HSS, HSS would partner with TAG to create a long-term joint venture relationship to provide products to customers to combat the terrorist threats in the Middle East region; and

- HSS had the capabilities to manufacture and install the four Jammers, and would do so in a timely fashion.

21.    Defendants made these representations verbally and in writing in or around April 2006. Jamil personally called TAG several times from his home to make these representations. At the time that Defendants made these representations, they knew that they were false.

22.    In reasonable reliance upon these representations, on or about April 10, 2006, TAG entered into the Agreement with HSS. A copy of the Agreement is attached hereto as Exhibit A.

23.    Pursuant to the Agreement, HSS was to install one of the Jammers and train TAG so that it could install the remaining Jammers. (Ex. A at 6, Section 4: Installation and Training.)

6

24.    Pursuant to the Agreement, TAG was required to pay $450,000 to HSS against the total order of $860,000, upon execution of the Agreement (*Id.* at 6, Section 3: Payment Terms.)

25.    TAG would pay the remaining balance only after certain conditions were met.  Specifically, the Agreement provided:

> As conditions precedent to Purchaser's obligation to pay the remaining balance of $410,000 all the following events must occur: (1) Installation of the four Jammers in Purchaser's vehicles in either Cleburne, TX or in Purchaser's installation facility in Long Island, NY; (2) Purchaser's client inspects and accepts the four Jammers; and (3) Purchaser receives payment in full from Purchaser's client.   The choice of location for installation shall be at Purchaser's discretion.

(*Id.*)

26.    Furthermore, HSS agreed to complete and deliver the four Jammers to TAG on or before October 14, 2006.  The Agreement provided:

> Failure to deliver the Jammers on or before this date shall be a material breach of this Agreement and HSS shall immediately reimburse [TAG] any monies paid to HSS pursuant to this Agreement without demand.

( *Id.* at 7, Section 6: Dates for Completion and Delivery.)

27.    On or about April 14, 2006, pursuant to the payment terms of the Agreement and at the urging of its Client, TAG made an advance payment of $450,000 to HSS via electronic wire transfer.

7

28.    Shortly thereafter, Defendants, in no uncertain terms, stated that they would not perform unless TAG paid an additional $250,000, which was not required by the Agreement.  TAG made formal demands upon Defendants, and each of them, to complete their obligations under the Agreement by the deadline.  Despite TAG's efforts, TAG did not receive any Jammers by the October 14, 2006 deadline.

29.    Additionally, Defendants failed and refused to refund the advance payment made by TAG in the amount of $450,000.  As of the date of this Complaint, Defendants, and each of them, failed and refused to cure their default, and TAG has been substantially injured in an amount to be proven at trial.

30.    Furthermore, as a result of HSS's breach of its agreement with TAG, TAG has been unable to complete its contract with its Client and therefore incurred consequential damages.

## FIRST CAUSE OF ACTION
### (Breach of Contract)
### (Against HSS)

31.    TAG repeats and realleges paragraphs 1 through 30 as if set forth fully herein.

32.    TAG duly performed all of the terms of the Agreement on its part to be performed.

33.    Despite numerous demands by TAG, HSS failed and refused to comply with its obligations as set forth expressly in the Agreement.

8

34.    Additionally, HSS failed and/or refused to return TAG's advance payment in the amount of $450,000, in breach of the Agreement.

35.    As a direct and proximate result of HSS's breach of the Agreement, TAG has sustained damages in an amount to be determined at trial, but in any event, not less than $2 million, plus interest and costs, and attorneys' fees.

### SECOND CAUSE OF ACTION
**(Fraudulent Inducement)**
**(Against HSS, Jamil and Decker)**

36.    TAG repeats and realleges paragraphs 1 through 35 as if set forth fully herein.

37.    TAG further alleges that Defendants, including Jamil and Decker, personally and individually, made false representations of material fact concerning the Agreement in order to induce TAG to agree to its terms.    Specifically, Defendants represented to TAG that:

- If monies were not immediately wired to HSS, some components of the Jammers would not be available, which would cause a delay in production and an increase in prices;

- HSS had many customers interested in purchasing armored cars and HSS would refer these customers to TAG if TAG entered into this contract with HSS;

9

- If TAG entered into this contract with HSS, HSS would partner with TAG to create a long-term joint venture relationship to provide products to customers to combat the terrorist threats in the Middle East region; and

- HSS had the capabilities to manufacture and install the four Jammers, and would do so in a timely fashion.

38.     These representations were false.

39.     The representations were material, which means that they were sufficiently important to influence TAG or the actions of a reasonable person or entity in TAG's position.

40.     Defendants knew that the representations were false.

41.     Defendants intended that TAG would act upon the representations in the manner reasonably contemplated by Defendants.

42.     TAG did not know the representations were false.

43.     TAG relied on the truth of the representations by agreeing to enter into the Agreement.

44.     TAG's reliance was reasonable and justified under the circumstances.

45.     Had TAG known that the representations were false, it would not have entered into the Agreement.

46.    As a direct and proximate result of the fraudulent acts of Defendants, TAG has sustained damages in an amount to be determined at trial, plus interest and costs, and attorneys' fees.

47.    Defendants' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

### THIRD CAUSE OF ACTION
### (Tortious Interference With Contract)
### (Against HSS, Jamil and Decker)

48.    TAG repeats and realleges paragraphs 1 through 47 as if set forth fully herein.

49.    Defendants were aware that TAG had an existing contract with its Client that relied upon the compliance with the terms of the Agreement for the purchase and installation of the four Jammers.

50.    Despite Defendants' knowledge of TAG's contractual commitments to its Client, Defendants' conduct made it impossible for TAG to complete the contract with its Client.

51.    As a direct and proximate result of Defendants' conduct causing HSS to breach the Agreement, TAG has sustained consequential damages in an amount to be determined at trial, but in any event, not less than $1.5 million, and its relationship has been irreparably damaged with its existing Client.

11

52.    Defendants' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

## FOURTH CAUSE OF ACTION
### (Conversion)
### (As an Alternative to the First Cause of Action)
### (Against HSS)

53.    TAG repeats and realleges paragraphs 1 through 52 as if set forth fully herein.

54.    Because HSS failed to deliver the Jammers on or before the October 14, 2006 deadline, TAG is the rightful owner of the $450,000 advance deposit that it paid to HSS.  HSS has failed and/or refused to return TAG's advance payment of $450,000.

55.    HSS has wrongfully, and without permission, gained possession of, and converted to its own use, TAG's advanced payment of $450,000.

56.    As a direct and proximate result of HSS's conversion, TAG has sustained damages in an amount to be determined at trial, but in any event, not less than $450,000, plus interest and costs, and attorneys' fees.

57.    HSS's actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.