## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (As an Alternative to the First and Fourth Causes of Action)
### (Against HSS)

58. TAG repeats and realleges paragraphs 1 through 57 as if set forth fully herein.

59. HSS accepted TAG's advance payment of $450,000.

60. TAG reasonably expected delivery of the four Jammers on or before the agreed-upon deadline of October 14, 2006.

61. HSS has willfully failed to complete its obligations under the Agreement and to return the advance payment in the amount of $450,000, without reason.

62. As a direct and proximate result of the foregoing, HSS has been unjustly enriched at the expense of TAG in an amount to be determined at trial, but in any event, not less than $450,000, plus interest and costs, and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment that TAG is Entitled to Complete Indemnification)
### (Against HSS, Jamil and Decker)

63. TAG repeats and realleges paragraphs 1 through 62 as if set forth fully herein.

64. Defendants knew that TAG would rely upon receipt and installation of the Jammers in order to comply with the terms of the contract with its own Client. Defendants knew that if they breached the terms of the Agreement with TAG, that they would make it impossible for TAG to complete its contract with its own Client.

65. There is an actual and justiciable controversy between TAG and Defendants concerning Defendants' obligation to indemnify TAG for any liability TAG may have to its Client due to TAG's inability to complete the contract with its Client.

66. TAG is entitled to a judgment declaring that if TAG is ever found liable to its Client by virtue of TAG's inability to complete its contract with its Client, in equity and good conscience, it is entitled to complete indemnification from Defendants for the full amount of any judgment, plus interest and costs, and attorneys' fees.

### SEVENTH CAUSE OF ACTION
**(Declaratory Judgment that HSS's Corporate Veil Shall Be Pierced)**
**(Against SIT and Jamil)**

67. TAG repeats and realleges paragraphs 1 through 66 as if set forth fully herein.

68. SIT and HSS share the same address and telephone number, 145 Huguenot Street, New Rochelle, New York 10801, (914) 654-8700.

69. SIT and HSS also overlap in officers and directors. Decker is an officer of both SIT and HSS, and upon information and belief, Jamil is an officer and/or director of both SIT and HSS.

70. According to SIT's Form 10-KSB, filed with the Securities Exchange Commission on October 5, 2007, SIT's website can be found at http://www.secintel.com. The relevant pages of SIT's Form 10-KSB are attached hereto

as Exhibit B. The opening page of the SIT's website is entitled "***Homeland Security Strategies***: Security & Intelligence Solutions." (Emphasis added.) Additionally, the opening page contains no description about SIT, but rather a description about HSS and its services, products and workshops. A copy of this webpage is attached hereto as Exhibit C.

71. Similarly, on a page on SIT's website entitled, "About the Company," there is no mention of SIT, but rather a detailed description about HSS. Furthermore, this webpage contain links to HSS's services, seminars, trade show calendar, job opportunities and locations. A copy of this webpage is attached hereto as Exhibit D.

72. Furthermore, on an SIT-related website, http://www.bombjammer.com, the following language is contained on the page entitled "About the Company": "To learn more about Homeland Security Strategies, visit: http://www.secintel.com," which is SIT's website, according to its Form 10-KSB. A copy of this webpage is attached hereto as Exhibit E.

73. On the application and registration form contained on this website, the bottom of the form appears as follows:

15

> **Security Intelligence Technologies, Inc.**
> **HOMELAND SECURITY STRATEGIES, INC. – WORLD HEADQUARTERS**
> 145 Huguenot Street, Suite 310, New Rochelle, New York 10801
> Tel. (914) 654 8700   Fax. (914) 654 1302
> e-mail: info@spyzone.com
> www.spyzone.com • www.bombjammers.com • www.gcomtech.com
> MIAMI • WASHINGTON DC • HONG KONG • LONDON • MEXICO CITY • SOFIA • RIYADH
> Homeland Security Strategies, Inc. is a wholly owned subsidiary of Security Intelligence Technologies, Inc., a publicly traded company.
> © HSS 2005

A copy of this form is attached hereto as Exhibit F.

74. Finally, according to SIT's Form 10-KSB, "[a]s of June 30, 2007, Ben Jamil, [SIT's] chairman of the board and chief executive officer, beneficially owns 50.9% of [SIT's] common stock and, as a result of preferred stock ownership, holds 76.8% of [SIT's] voting right, and he exercises control over [SIT's] operations." (Ex. B at 11.)

75. SIT and Jamil, at all times, exercised complete domination and control over the operation, management and financial affairs of HSS.

76. SIT and Jamil controlled the operation of HSS without regard for corporate formalities.

77. Upon information and belief, HSS was, from its inception, a highly undercapitalized corporation.

78. Upon information and belief, SIT and Jamil diverted the corporate funds of HSS for SIT's corporate and Jamil's personal uses.

16

79. Upon information and belief, through their control of HSS, SIT and Jamil diverted the corporate funds of HSS, thereby causing HSS to have insufficient funds to complete performance under the terms of the Agreement and to breach the Agreement and making it impossible for TAG to complete its contract with its Client. Through their control of HSS, SIT and Jamil committed a wrong against TAG which resulted in injury to TAG.

80. Through their control of HSS, SIT and Jamil made various fraudulent misrepresentations to induce TAG into entering that it would not have otherwise. Specifically, they represented that:

- If monies were not immediately wired to HSS, some components of the Jammers would not be available, which would cause a delay in production and an increase in prices;

- HSS had many customers interested in purchasing armored cars and HSS would refer these customers to TAG if TAG entered into this contract with HSS;

- If TAG entered into this contract with HSS, HSS would partner with TAG to create a long-term joint venture relationship to provide products to customers to combat the terrorist threats in the Middle East region; and

- HSS had the capabilities to manufacture and install the four Jammers, and would do so in a timely fashion.

81. These representations are false, and SIT and Jamil knew that they were false and intended TAG to rely on these representations. Through his control of HSS, SIT and Jamil committed a wrong against TAG which resulted in injury to TAG.

82. SIT and Jamil operated HSS as their "alter ego," perverting and abusing the privilege of doing business in the corporate form.

83. A dispute exists between TAG and Defendants concerning whether SIT and Jamil, by virtue of operating HSS as their "alter ego," are liable for the above-described actions and debts of HSS. As a consequence of this dispute, there is an actual and justiciable controversy between TAG and Defendants.

84. TAG is entitled to a judgment declaring that the corporate veil of HSS shall be pierced; that HSS is the alter ego of both SIT and Jamil; and that SIT and Jamil are liable for HSS's actions, omissions and debts.

**WHEREFORE,** Plaintiff prays for judgment to be entered in favor of Plaintiff and against Defendants as follows:

A. On the first cause of action, judgment against Defendants in an amount to be determined at trial, but in any event, not less than $2 million;

B. On the second cause of action, judgment against Defendants in an amount to be determined at trial;