UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE ARMORED GROUP, LLC,

                Plaintiff,

   -against-

HOMELAND SECURITY STRATEGIES, INC.,
SECURITY INTELLIGENCE TECHNOLOGIES,
INC., BEN JAMIL, and CHRIS R. DECKER,

             Defendants.

07 Civ. 9694 (LAP) (GWG)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND, THIRD, FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION, AND ALL CLAIMS FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

DAVIS & GILBERT LLP
Neal H. Klausner, Esq.
Allie Lin, Esq.
1740 Broadway
New York, New York 10019
(212) 468-4800
nklausner@dglaw.com

CARMAGNOLA & RITARDI, L.L.C.
Steven F. Ritardi, Esq. (*pro hac vice*)
60 Washington Street
Morristown, New Jersey 07960
(973) 267-4445
sritardi@cr-law.net

*Attorneys for Plaintiff*
*The Armored Group, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 6

I.      LEGAL STANDARD ............................................................................................... 6

II.     TAG'S SECOND CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT
IS NOT REDUNDANT OF ITS BREACH OF CONTRACT CLAIM AND
COMPLIES WITH RULE 9(B) .............................................................................. 7

        A.    The Complaint States a Claim of Fraudulent Inducement Separate and
Apart from the Breach of Contract Claim, and the Parol Evidence Rule
Does Not Bar Such a Claim ........................................................................ 7

        B.    TAG Has Pled Its Fraudulent Inducement Claim with Sufficient
Particularity to Meet the Requirements of Rule 9(b) ................................. 8

III.    TAG'S THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE
WITH CONTRACT DOES NOT REQUIRE ALLEGATIONS THAT
DEFENDANTS' CONDUCT WAS DIRECTED AT A THIRD PARTY AND
WAS CRIMINAL OR TORTIOUS ....................................................................... 11

IV.    TAG HAS ADEQUATELY PLED ITS SEVENTH CAUSE OF ACTION FOR
DECLARATORY JUDGMENT THAT HSS'S CORPORATE VEIL SHOULD
BE PIERCED .......................................................................................................... 13

V.     RULE 8 OF THE FEDERAL RULES PERMIT TAG TO PLEAD ITS FOURTH
CAUSE OF ACTION FOR CONVERSION IN THE ALTERNATIVE TO ITS
BREACH OF CONTRACT CLAIM ...................................................................... 17

VI.    TAG'S SIXTH CAUSE OF ACTION FOR INDEMNIFICATION IS NOT
REDUNDANT OF ITS BREACH OF CONTRACT CLAIM OR PREMATURE .......... 18

VII.   TAG'S CLAIMS FOR PUNITIVE DAMAGES SHOULD NOT BE DISMISSED ........ 19

CONCLUSION .................................................................................................................. 20

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ASTI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ....................................6, 10

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ...............................................................................17

*In re Alstom SA Secs. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006)...........................................17

*Am. Bldg. Main. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298
    (N.D.N.Y. 2007) ...............................................................................................................19, 20

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......................................................................6

*Culbreth v. Amosa Ltd.*, 898 F.2d 13 (3d Cir. 1990) ....................................................................13

*Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301 (S.D.N.Y. 1996) ...................................15

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987).........................9, 15

*Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366,
    2006 U.S. Dist. LEXIS 76004 (S.D.N.Y. Oct. 18, 2006) ......................................................17

*Fagan v. First Sec. Invs., Inc.*, No. 04 Civ. 1021,
    2006 U.S. Dist. LEXIS 66065 (S.D.N.Y. Sept. 15, 2006)......................................................18

*Fantozzi v. Axsys Techs.*, No. 07 Civ. 2667,
    2007 U.S. Dist. LEXIS 61448 (S.D.N.Y. Aug. 20, 2007).......................................................18

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ......................................................................13

*Freeman v. Complex Computing Co.*, 119 F.3d 1044 (2d Cir. 1997)......................................13-14

*G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1995)..............................................12

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ...............................................................................6

*Harrison v. NBD, Inc.*, 990 F. Supp. 179 (E.D.N.Y. 1998)...........................................................13

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996)........................................................................8

*I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*, No. 92 Civ. 1843,
    1993 U.S. Dist. LEXIS 3560 (S.D.N.Y. Mar. 25, 1993) .........................................................9

## TABLE OF AUTHORITIES

*Int'l Motor Sports Group, Inc. v. Gordon*, No. 98 Civ. 5611,
    1999 U.S. Dist. LEXIS 12610 (S.D.N.Y. Aug. 16, 1999).................................9, 10

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474
    (S.D.N.Y. 2002), *overruled in part by ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................... 9-10, 11

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .................................................................6

*Italverde Trading, Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187 (S.D.N.Y. 2007) ...............12

*Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) ....................................9, 10

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007) ...............................8

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765,
    2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. Sept. 12, 2002)...................................15, 16

*Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541
    (S.D.N.Y. 2007) ..................................................................................................17

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) ...................................................8

*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005).................................16

*Piccolo A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998).......................12

*Plantronics, Inc. v. United States of Am.*, No. 88 Civ. 1892,
    1990 U.S. Dist. LEXIS 5788 (S.D.N.Y. May 16, 1990)..........................................19

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007)....................6

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) ............................................................15

*Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363 (S.D.N.Y. 2004)...............................10

*Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d 231 (S.D.N.Y. 2006) .................................16

*Textiles Network Ltd. v. DMS Enters., LLC*, No. 07 Civ. 393,
    2007 U.S. Dist. LEXIS 64247 (S.D.N.Y. Aug. 21, 2007)..................................14, 17

*Treimer v. Bobsan Corp.*, 70 F. Supp. 2d 375 (S.D.NY. 1999)......................................14

*United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96 (2d Cir. 2000)....................13

# TABLE OF AUTHORITIES

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995)...............................6

*Wall v. CSX Transp., Inc.*, 471 F.3d 410 (2d Cir. 2006)........................................7, 8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
    933 F.2d 131 (2d Cir. 1991).......................................................13

## STATE CASES

*Bay Ridge Air Rights, Inc. v. State of N.Y.*, 57 A.D.2d 237 (3d Dep't 1977) ................19

*Braten v. Bankers Trust Co.*, 60 N.Y.2d 155 (1983) .....................................8

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004)...............................11, 12

*Cresser v. American Tobacco Co.*, 174 Misc. 2d 1 (N.Y. Sup. Ct. Kings Co. 1997)...................14

*First Bank of the Ams. v. Motor Car Funding, Inc.*, 257 A.D.2d 287 (1st Dep't 1999).................7

*Gross v. Empire Healthchoice Assurance, Inc.*, No. 602848-05, 2006 NY Slip Op
    50903U (N.Y. Sup. Ct. N.Y. County May 18, 2006) .....................................11

*Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90 (1993) .........................................11

*Lawrence v. Union of Orthodox Jewish Congregations of Am.*, 32 A.D.3d 304
    (1st Dep't 2006) ...............................................................11

*Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135 (1993) .........................13

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614 (1996) ...............12

*O'Brien v. Key Bank, N.A.*, 223 A.D.2d 830 (3d Dep't 1996)...............................18, 19

*State of N.Y. v. Ehasz*, 80 A.D.2d 671 (3d Dep't 1981).........................................18-19

## FEDERAL STATUTES

Fed. R. Civ. P. 8(a) (2008)................................................................8, 17

Fed. R. Civ. P. 8(d) (2008)................................................................17

Fed. R. Civ. P. 8(e) (2008)................................................................9

Fed. R. Civ. P. 9(b) (2008)...........................................................8-11, 15-16

Plaintiff The Armored Group ("Plaintiff" or "TAG") submits this memorandum of law in opposition to the motion to dismiss of defendants Homeland Security Strategies, Inc. ("HSS"), Security Intelligence Technologies, Inc. ("SIT"), Ben Jamil ("Jamil"), and Chris R. Decker ("Decker") (collectively, "Defendants"), seeking to dismiss the second, third, fourth, sixth and seventh causes of action, and all claims for punitive damages and attorneys' fees in Plaintiff's First Amended Complaint ("Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Defendants have moved to dismiss TAG's causes of action for fraudulent inducement, tortious interference with contract, conversion, indemnification, and piercing the corporate veil. TAG's Complaint, however, sufficiently pleads all of the elements of the claims Defendants seek to dismiss and states with particularity the elements necessary to adequately plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure ("Federal Rules").

Specifically, because TAG's Complaint alleges that Defendants, including Jamil and Decker, individually and personally, made fraudulent misrepresentations collateral to the parties' agreement, it adequately states a claim for fraudulent inducement separate and distinct from a claim for breach of contract. TAG's Complaint also fulfills the particularity requirements of Rule 9(b) because it alleges the who, when, and where of TAG's fraud claim with enough precision to give Defendants fair and reasonable notice of the claim and the grounds upon which it is based. Furthermore, in support of TAG's veil piercing claim, TAG's Complaint alleges specific factual allegations demonstrating that SIT and Jamil exercised complete domination and control over HSS and used that control to cause injury to TAG. Many courts in this circuit have taken a generous view of claims based on the corporate veil piercing doctrine and have refused to dismiss claims that were supported with a similar level of detail at this pre-discovery stage.

Contrary to Defendants' contentions, TAG's Complaint pleads more than just a claim for breach of contract against HSS. It has adequately alleged a fraudulent inducement claim against all Defendants and a veil piercing claim against SIT and Jamil, as well as claims for tortious interference with contract, conversion and indemnification. Accordingly, this Court must deny Defendants' motion to dismiss.

## STATEMENT OF FACTS

A.    **Defendants Fraudulently Induce TAG into Entering into an Agreement with HSS**

TAG provides armoring services to a variety of clients around the world. (Compl. ¶ 9.) In or around March 2006, TAG contracted with one of its clients ("Client") to build and deliver a number of armored vehicles. (*Id.* ¶ 16.) The contract called for the vehicles to contain security systems to defend against remotely controlled improvised explosive devices. (*Id.*) In or around April 2006, in order to complete the terms of the contract with its Client, TAG sought the goods and services of HSS, a wholly-owned subsidiary of SIT, which purportedly provides surveillance, counter-terrorism, and electronic jamming products and services.[1] (*Id.* ¶¶ 10, 11, 17.) Specifically, TAG sought to purchase and have four customized "Jammers" installed in the armored vehicles. (*Id.* ¶ 17.) A Jammer prevents detonation of remotely controlled improvised explosive devices. (*Id.*) After a TAG representative made initial contact with HSS, HSS officers Jamil and Decker entered into negotiations with TAG. (*Id.* ¶ 18.)

TAG explained to HSS and specifically Jamil and Decker that time was of the essence. (*Id.* ¶ 19.) They knew that TAG was dependent on HSS to deliver the four Jammers in a

---

[1]    Defendants mischaracterize the Complaint and assert that TAG "concedes" that HSS has a repertoire of surveillance, counter-terrorism and electronic jamming products and services. (Defs.' Mem. at 19.) The Complaint, however, merely alleges that HSS "purportedly" has these products and services. (Compl. ¶ 10.)

2

timely fashion, and that failure to provide the Jammers would endanger TAG's contract with its Client. (*Id.*) In order to induce TAG to enter into the Agreement, HSS, and Jamil and Decker, personally and individually, represented to TAG that:

- If monies were not immediately wired to HSS, some components of the Jammers would not be available, which would cause a delay in production and an increase in prices;

- HSS had many customers interested in purchasing armored cars and HSS would refer these customers to TAG if TAG entered into this contract with HSS;

- If TAG entered into this contract with HSS, HSS would partner with TAG to create a long-term joint venture relationship to provide products to customers to combat the terrorist threats in the Middle East region; and

- HSS had the capabilities to manufacture and install the four Jammers, and would do so in a timely fashion.

(*Id.* ¶ 20.) HSS, and Jamil and Decker, personally and individually, made these representations in or around April 2006. (*Id.* ¶ 21.) Jamil personally called TAG several times from his home to make these representations. (*Id.*) At the time that HSS, Jamil and Decker made these representations, they knew that they were false. (*Id.*) In reasonable reliance upon these representations, on or about April 10, 2006, TAG entered into an agreement with HSS ("Agreement"). (*Id.* Ex. A.)

### B.    Defendants Breach the Agreement by Failing to Provide the Four Jammers and Failing to Return the $450,000 Advance Payment

Pursuant to the Agreement, HSS was to install one of the Jammers and train TAG so that it could install the remaining Jammers. (*Id.* Ex. A at 6.) Furthermore, TAG was required to pay $450,000 to HSS against the total order of $860,000, upon execution of the Agreement. (*Id.*) TAG would pay the remaining balance only after certain conditions were met. Specifically, the Agreement provided:

3

> As conditions precedent to Purchaser's obligation to pay the remaining balance of $410,000 all the following events must occur: (1) Installation of the four Jammers in Purchaser's vehicles in either Cleburne, TX or in Purchaser's installation facility in Long Island, NY; (2) Purchaser's client inspects and accepts the four Jammers; and (3) Purchaser receives payment in full from Purchaser's client. The choice of location for installation shall be at Purchaser's discretion.

(*Id.*) HSS agreed to complete and deliver the four Jammers to TAG on or before October 14, 2006. (*Id.* Ex. A at 7.) The Agreement provided:

> Failure to deliver the Jammers on or before this date shall be a material breach of this Agreement and HSS shall immediately reimburse [TAG] any monies paid to HSS pursuant to this Agreement without demand.

(*Id.*)

On or about April 14, 2006, pursuant to the payment terms of the Agreement, TAG made an advance payment of $450,000 to HSS. (*Id.* ¶ 27.) Shortly thereafter, HSS stated that it would not perform unless TAG paid an additional $250,000, which was not required by the Agreement. (*Id.* ¶ 28.) TAG made demands upon HSS, and Jamil and Decker, to complete their obligations under the Agreement by the deadline. (*Id.*) Despite TAG's efforts, TAG did not receive any Jammers by October 14, 2006. (*Id.*) Furthermore, HSS has refused to refund the $450,000 advance payment made by TAG. (*Id.* ¶ 29.) As a result of HSS's breach of the Agreement, TAG has been unable to complete its contract with its Client. (*Id.* ¶ 30.)

### C.    SIT and Jamil Operate HSS as Their "Alter Egos"

SIT is a publicly traded company that purportedly designs, assembles, markets and sells security products. (*Id.* ¶ 11.) HSS and SIT share the same address and telephone number, as well as officers and directors. (*Id.* ¶¶ 12, 13, 68, 69.) According to SIT's most recent Securities Exchange Commission ("SEC") filing, SIT's website can be found at http://www.secintel.com.

4

(*Id.* Ex. B.)  The opening page of SIT's website, entitled "***Homeland Security Strategies***: Security & Intelligence Solutions," (emphasis added), contains no description of SIT, but rather a description of HSS and its services, products and workshops.  (*Id.* Ex. C.)  Similarly, on another page of SIT's purported website entitled "About the Company," there are links to HSS's services, seminars, trade show calendar, job opportunities and locations, and a detailed description about HSS; nowhere, however, is there any mention of SIT.  (*Id.* Ex. D.)  Meanwhile, HSS's purported website, http://www.bombjammer.com, refers customers to SIT's website "[t]o learn more about Homeland Security Strategies."  (*Id.* Ex. E.)  The bottom of an application and registration form found on HSS's purported website appears as follows:

**Security Intelligence Technologies, Inc.**
HOMELAND SECURITY STRATEGIES, INC. – WORLD HEADQUARTERS
145 Huguenot Street, Suite 310, New Rochelle, New York 10801
Tel. (914) 654 8700    Fax. (914) 654 1302
e-mail: info@spyzone.com
www.spyzone.com • www.bombjammers.com • www.gcomtech.com
MIAMI • WASHINGTON DC • HONG KONG • LONDON • MEXICO CITY • SOFIA • RIYADH
Homeland Security Strategies, Inc. is a wholly owned subsidiary of Security Intelligence Technologies, Inc., a publicly traded company.
© HSS 2005

(*Id.* Ex. F.)

According to SIT's SEC filling, "[a]s of June 30, 2007, Ben Jamil, [SIT's] chairman of the board and chief executive officer, beneficially owns 50.9% of [SIT's] common stock and, as a result of preferred stock ownership, holds 76.8% of [SIT's] voting rights, and ***he exercises control over [SIT's] operations***."  (*Id.* Ex. B at 11 (emphasis added).)

HSS was, from its inception, a highly undercapitalized corporation, and SIT and Jamil diverted the corporate funds of HSS for their own uses, thereby causing HSS to have insufficient funds to complete performance under the terms of the Agreement and making it impossible for TAG to complete its contract with its Client.  (*Id.* ¶¶ 77-79.)  Through their control of HSS, SIT and Jamil also made various fraudulent misrepresentations to induce TAG into

entering in the Agreement that it would not have otherwise. (*Id.* ¶ 80.) SIT and Jamil used their complete domination and control over HSS to commit these wrongs, which resulted in injury to TAG. (*Id.* ¶¶ 79, 91-82.)

## **ARGUMENT**

### I.    **LEGAL STANDARD**

On a Rule 12(b)(6) motion, the Court must accept all allegations as true and draw all reasonable inferences in TAG's favor. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Interpreting the Supreme Court's recent decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Second Circuit concluded, "we believe the [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard . . .'" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "To survive dismissal, the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ASTI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1965). "The plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). "The issue [to consider] is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotations and citation omitted). As demonstrated below, the allegations contained in the Complaint are sufficient "to raise a right to relief above the speculative level," and therefore satisfy *Bell Atlantic*'s plausibility standard.

## II.  TAG'S SECOND CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT IS NOT REDUNDANT OF ITS BREACH OF CONTRACT CLAIM AND COMPLIES WITH RULE 9(B)

### A.  The Complaint States a Claim of Fraudulent Inducement Separate and Apart from the Breach of Contract Claim, and the Parol Evidence Rule Does Not Bar Such a Claim

Defendants allege that TAG's fraud claim is barred because it is duplicative of its breach of contract claim. (Defs.' Mem. at 7-9.) Although a plaintiff's sole remedy is for breach of contract where a fraud claim merely alleges that the defendant never intended to perform the promises contained in the parties' contract, under New York law, "a promise to take some future action which is collateral to the contract can be considered a 'misrepresentation' for purposes of a fraud in the inducement cause of action." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (citations omitted). TAG alleges in its Complaint that Defendants represented to TAG that HSS "would refer [] customers [interested in purchasing armored cars] if TAG entered into this contract with HSS;" and "[i]f TAG entered into this contract with HSS, HSS would partner with TAG to create a long-term joint venture relationship." (Compl. ¶ 20.) These are promises to take some future action, which were collateral to and not contained in the Agreement. At the time Defendants made these representations, they knew that they were false. (*Id.* ¶ 21.) Accordingly, these allegations are sufficient to state a claim of fraudulent inducement.

Furthermore, under New York law, "a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." *First Bank of the Ams. v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 292 (1st Dep't 1999). Several of the allegations contained in the Complaint involve misstatements and omissions of present facts. For example, TAG alleges that Defendants represented that: (1) HSS "had the capabilities to manufacture and install the four Jammers;" (2) HSS "had many customers interested in purchasing armored cars;" and (3) "[i]f monies were not

immediately wired to HSS, some components of the Jammers would not be available, which would cause a delay." (Compl. ¶ 20.) Accordingly, because these allegations involve misrepresentations of present fact, they also give rise to a cause of action for fraudulent inducement separate and distinct from a breach of contract claim. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007).

Defendants contend that these allegations "merely seek to allow parol[] evidence of additional terms into the written agreement alleged by the Plaintiff, contrary to well settled New York law." (Defs.' Mem. at 9.) Defendants' citation to the parol evidence rule, however, is misplaced. The parol evidence merely prevents a party from using prior oral agreements to vary the terms of an integrated written instrument, *Braten v. Bankers Trust Co.*, 60 N.Y.2d 155 (1983), but has no bearing on whether oral representations or agreements collateral to a contract can be used to support a claim of fraudulent inducement. In fact, "New York [] permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration, or merger, clause." *Wall,* 471 F.3d at 416 (citations omitted). Accordingly, where an agreement does not even contain a merger clause, as is the case here, the parol evidence rule clearly presents no bar to a claim for fraudulent inducement.

### B.    TAG Has Pled Its Fraudulent Inducement Claim with Sufficient Particularity to Meet the Requirements of Rule 9(b)

The purpose of Rule 9(b) of the Federal Rules is to provide a defendant "fair notice" of plaintiff's claim, protect the defendant from reputational harm, and reduce the number of strike suits. *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). Rule 9(b) must be read in conjunction with Rule 8(a), requiring "a short and plain statement of the claim" for relief, and

Rule 8(f), which provides that "all pleadings shall be so construed as to do substantial justice."[2] *See Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990) (internal quotations omitted); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Accordingly, "a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint 'gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based.'" *Int'l Motor Sports Group, Inc. v. Gordon*, No. 98 Civ. 5611, 1999 U.S. Dist. LEXIS 12610, at *11 (S.D.N.Y. Aug. 16, 1999) (citation omitted). Indeed, "there is no bright line rule for deciding whether a complaint has satisfied Rule 9(b)." *I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*, No. 92 Civ. 1843, 1993 U.S. Dist. LEXS 3560, at *4 (S.D.N.Y. Mar. 25, 1993).

As set forth in more detail below, Defendants' contentions that TAG has failed to state its fraud claim with the requisite particularity because "the complaint does not specify where these statements occurred, the date when these statements occurred, and who the particular speaker was at the time," (Defs.' Mem. at 10), are without merit. TAG addresses each of them below.

First, although TAG does not specifically identify the location where the misrepresentations were made by Defendants, TAG alleges that some statements were made by Jamil from his home, which, upon information and belief, is located in New York. (Compl. ¶¶ 12, 21.) Furthermore, it can be inferred from the Complaint, which alleges that the statements were made "verbally and in writing," that other misrepresentations were made from HSS's office in New York to TAG's office in Arizona. (*Id.* ¶¶ 9-10, 21.) These allegations meet the particularity requirements of Rule 9(b). *See Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 401 (S.D.N.Y. 2007) (even though location of meeting was not specifically identified, court found that it could be

---

[2]    Pursuant to the December 1, 2007 amendments to the Federal Rules, Rule 8(f) is now embodied in Rule 8(e).

inferred that meeting was held in offices of one of the corporate defendants, and therefore Rule 9(b) was satisfied); *Internet Law Library, Inc. v. Southridge Capital Mgmt.*, LLC, 223 F. Supp. 2d 474, 482 (S.D.N.Y. 2002), *overruled in part by ATSI Commc'ns., Inc.*, 493 F.3d 87 (court held that allegation that negotiations were "conducted by phone, fax and email, with [plaintiff ] in Texas and [defendants] in Connecticut" met the requirements of Rule 9(b)) (internal quotations omitted). "No more is necessary under Rule 9(b)." *Internet Law Library*, 223 F. Supp. at 482.

Second, while the Complaint does not provide exact dates for the statements, it alleges that the fraudulent representations were made "in or around April 2006," (Compl. ¶ 21), which many courts have found to be sufficiently circumscribed to satisfy the requirements of Rule 9(b). *See Kalin*, 526 F. Supp. 2d at 401 (holding identification of date of statements as "[i]n or around September 1999" sufficient); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 378 n.104 (S.D.N.Y. 2004) (finding a two-month period during which several meetings and conversations occurred sufficient); *Internet Law Library*, 223 F. Supp. at 482 (finding allegation that fraudulent statements were made "all through March and April 2000" sufficient) (internal quotations omitted); *Int'l Motor Sports Group, Inc.*, 1999 U.S. Dist. LEXIS 12610, at *12 (holding that a 60-day period during which a series of conversations occurred sufficient).

Finally, TAG's allegation that HSS, and Jamil and Decker, personally and individually, made false representations to TAG, (Compl. ¶ 37), is sufficiently particular to meet the "who" requirement under Rule 9(b). *See Kalin*, 526 F. Supp. 2d at 401 (holding that identification of speakers as two of the defendants sufficient); *Internet Law Library, Inc.*, 223 F. Supp. 2d at 481 (finding allegation that "defendants [], and each of them . . . made the following misrepresentations" sufficient) (internal quotations omitted). Defendants contend that the Complaint implies that these statements were made "simultaneously" by all Defendants to TAG.

10

(Defs.' Mem. at 10, 18.)  However, the Complaint makes no such suggestion; it merely identifies HSS, Jamil and Decker as the speakers.  Because there is little danger that Defendants will lack notice of or be confused as to what misrepresentations they are charged with having committed, *see Internet Law Library, Inc.*, 223 F. Supp. 2d at 481, TAG has adequately stated its claim for fraudulent inducement with the requisite particularity under Rule 9(b).

## III.    TAG'S THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT DOES NOT REQUIRE ALLEGATIONS THAT DEFENDANTS' CONDUCT WAS DIRECTED AT A THIRD PARTY AND WAS CRIMINAL OR TORTIOUS

Defendants argue that TAG's claim for tortious interference with contract must be dismissed because the Complaint fails to allege that (1) "Defendants directed any conduct at the Clients of the Plaintiff in any fashion" (emphasis in original), and (2) Defendants engaged in any 'criminal or tortious' conduct during its purported interference with the Plaintiff's contractual commitment with its clients."  (Defs.' Mem. at 11-13.)  But all the cases cited by Defendants involve claims of tortious interference *with business or economic relations*, not tortious interference *with a binding contract. See, e.g., Gross v. Empire Healthchoice Assurance, Inc.*, No. 602848-05, 2006 NY Slip Op 50903U, at 7 (N.Y. Sup. Ct. N.Y. County May 18, 2006); *Lawrence v. Union of Orthodox Jewish Congregations of Am.*, 32 A.D.3d 304, 304 (1st Dep't 2006).  Although "inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, . . . the elements of the two torts are not the same."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004).

Here, TAG's third cause of action is for tortious interference *with a binding contract*, which consists of four elements: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to

11

plaintiff." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993). The requirement under New York law that a defendant must direct some conduct at a third party applies only to claims of tortious interference with business relations, not to claims of tortious interference with a binding contract. *See, e.g., G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995); *Piccolo A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 167 n.65 (S.D.N.Y. 1998). Furthermore, this Court has concluded that, with respect to pleading the third element of a claim of tortious interference with contract, plaintiffs are not required to allege or show that a defendant caused a third party to breach a contract. *Italverde Trading, Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187 (S.D.N.Y. 2007). Instead, "[c]ausing a plaintiff to breach a contract by preventing the plaintiff's performance constitutes tortious interference with a contract, provided that the other elements of the tort are satisfied." *Id.* at 203.

Similarly, the requirement that TAG must allege that Defendants' conduct was "criminal or tortious" conduct applies only to claims for tortious interference with prospective contracts or other nonbinding economic relations. *Carvel*, 3 N.Y.3d at 189-90. The New York Court of Appeals has held:

> Thus, where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant.

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614 (1996) (internal quotations and citation omitted). Only in a suit based on interference with *a nonbinding relationship*, does a plaintiff have to allege that the defendant's conduct amounted to a crime or independent tort. *Carvel*, 3 N.Y.3d at 190. Here, because there was a valid and binding contract between TAG and

12

its Client, TAG was not required to allege that Defendant's conduct was criminal or tortious.
Accordingly, TAG's claim for tortious interference with contract should not be dismissed.

## IV.   TAG HAS ADEQUATELY PLED ITS SEVENTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT THAT HSS'S CORPORATE VEIL SHOULD BE PIERCED

In order to pierce the corporate veil in New York, a plaintiff must demonstrate that
the defendant has exercised complete domination over the corporation and used that domination to
commit a fraud or wrong that injured the plaintiff."[3]   *Morris v. N.Y. State Dep't of Taxation &
Fin.*, 82 N.Y.2d 135,141 (1993).   The "alter ego question depends on the totality of the facts,"
*United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000) (internal quotations
and citation omitted), and "differs with the circumstances of each case."   *Wm. Passalacqua
Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir. 1991) (internal quotations
and citations omitted).   Among the factors that may be considered in determining whether to
pierce the corporate veil are:

> (1) disregard of corporate formalities; (2) inadequate capitalization;
> (3) intermingling of funds; (4) overlap in ownership, officers,
> directors, and personnel; (5) common office space, address and
> telephone numbers of corporate entities; (6) the degree of discretion
> shown by the allegedly dominated corporation; (7) whether the
> dealings between the entities are at arms length; (8) whether the
> corporations are treated as independent profit centers; (9) payment
> or guarantee of the corporation's debts by the dominating entity, and
> (10) intermingling of property between the entities.

---

[3]   "[U]nder New York choice of law principles, 'the law of the state of incorporation
determines when the corporate form will be disregarded and liability will be imposed on
shareholders.'"   *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (citation
omitted).   Because HSS is a Delaware corporation, Delaware law should be applied in this
case.   In any event, New York and Delaware law on this issue are substantially similar.
*See Harrison v. NBD, Inc.*, 990 F. Supp. 179, 184 (E.D.N.Y. 1998) (*citing Culbreth v.
Amosa Ltd.*, 898 F.2d 13, 14 (3d Cir. 1990)) ("[U]nder Delaware law, the plaintiff must
show that the controlling corporation wholly ignored separate status of controlled
corporation and so dominated and controlled its affairs that separate existence was a
sham.").

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997). "[A] plaintiff is not required to demonstrate that each of these factors exists at the pleading stage." *Textiles Network Ltd. v. DMS Enters., LLC*, No. 07 Civ. 393, 2007 U.S. Dist. LEXIS 64247, at *13 (S.D.N.Y. Aug. 21, 2007).

Defendants argue that TAG's veil-piercing claim: (1) consists of conclusory and formulaic allegations insufficient to withstand a motion to dismiss, (2) fails to meet the particularity requirements of Rule 9(b), and (3) fails to show that the domination of HSS was the cause of the alleged dispute. (Defs.' Mem. at 17-19.) As demonstrated below, Defendants' contentions are baseless.

First, TAG's Complaint alleges that HSS and SIT share the same address and telephone number, as well as overlap in officers and directors. (Compl. ¶¶ 68-69.) It further alleges that SIT's purported website actually appears to be a website for HSS, and HSS's purported website refers customers to SIT's website "[t]o learn more about Homeland Security Strategies." (*Id.* ¶¶ 70-72.) The Complaint also avers that Jamil is a director and/or officer of HSS and also "holds 76.8% of [SIT's] voting right[s] and . . . exercises control over SIT's operations." (*Id.* ¶¶ 12, 74, Ex B. at 11.) Defendants' contention that these allegations are somehow "formulaic" or "conclusory" and merely a recasting of the criteria for piercing the corporate veil, like in the cases cited by Defendants, *see Treimer v. Bobsan Corp.*, 70 F. Supp. 2d 375 (S.D.N.Y. 1999) and *Cresser v. American Tobacco Co.*, 174 Misc. 2d 1, 5 (N.Y. Sup. Ct. Kings County 1997), is unfounded. Equally unfounded is Defendant's contention that HSS is a distinct entity based on the facts that HSS is the only Defendant who was a party to the Agreement, TAG made payment only to HSS, and the Agreement contains a distinct HSS logo. Defendants completely misunderstand the elements required for a veil piercing claim. TAG does

14

not need to allege that SIT and Jamil were parties to the Agreement or that monies were directly wired to them; to plead a veil piercing claim, TAG needs only to allege facts demonstrating that SIT and Jamil were operating HSS as their alter egos, which it has sufficiently done so in the Complaint.

TAG's Complaint also alleges, upon information and belief, that HSS is a highly undercapitalized corporation, and SIT and Jamil diverted HSS's corporate funds for their own uses, thereby causing HSS to be unable to complete performance under the Agreement. (Compl. ¶¶ 77-79.) Although allegations of fraud ordinarily cannot be based on information and belief, *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972), this pleading restriction may be relaxed where the matter is peculiarly within the knowledge of the defendant. *DiVittorio*, 822 F.2d at 1247; *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1310 (S.D.N.Y. 1996) ("Fraud allegations may be based upon information and belief as to facts peculiarly within the opposing party's knowledge.") Because HSS is a small, closely-held corporation, facts about its capitalization and the use of its funds is peculiarly within the knowledge of Defendants and may be alleged upon information and belief. Additionally, it is not unreasonable to believe that HSS could be undercapitalized, as the financial outlook of SIT, HSS's parent, appears to be quite bleak: "At June 30, 2007, [SIT] had cash of approximately $7,000, no accounts receivable, and a working capital deficit of approximately $8.6 million." (Compl. Ex. B at 6.)

Second, "[b]ecause the predicate for application of corporate veil piercing is the commission of a fraud *or* wrong, not every claim based on the theory must meet the more exacting standards of Rule 9(b)." *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765, 2002 U.S. Dist. LEXIS 17256, at *13-14 (S.D.N.Y. Sept. 12, 2002). Here, TAG alleges that SIT and Jamil used HSS to both fraudulently induce TAG into entering into the Agreement and to

15

breach the Agreement. (Compl. ¶¶ 36-47.) Rule 9(b) only applies to TAG's veil-piercing claim to the extent it is based on fraud. *Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d 231, 240-41 (S.D.N.Y. 2006). To the extent it is based on some non-fraudulent wrong, like breach of contract, "Rule 9(b) has no office to perform in assessing the sufficiency of the alter ego claim." *Network Enters.*, 2002 U.S. Dist. LEXIS 17256, at *16. Furthermore, because allegations of dominance and control are not fraud-based claims, they are not subject to the pleading standard of Rule 9(b). *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 292 (S.D.N.Y. 2005) (citations omitted). As set forth above, TAG's allegations relating to Defendants' fraudulent misrepresentations have been pled with adequate particularity. (*See supra* at 9-11.) But, even if this Court were to find that the fraudulent inducement part of TAG's alter ego claim does not meet Rule 9(b) standards, the Complaint nonetheless alleges sufficient facts to justify piercing the corporate veil based on the non-fraudulent wrong alleged. *See Network Enters.*, 2002 U.S. Dist. LEXIS 17256, at *16.

Finally, TAG has sufficiently alleged that SIT and Jamil's control of HSS was used to commit a fraud or wrong that caused injury TAG. TAG alleges in its Complaint that "through their control of HSS," SIT and Jamil made various fraudulent misrepresentations to TAG and diverted corporate funds which caused HSS to breach the Agreement, resulting in injury to TAG. (Compl. ¶¶ 79-81.) "Considering the fact intensive nature of this inquiry, these allegations are sufficient at this pre-discovery stage to withstand dismissal of the alter ego claim. Other courts in this circuit have taken a generous view of claims based on the corporate veil piercing doctrine and have refused to dismiss claims that were supported with a similar level of detail." *Network Enters.*, 2002 U.S. Dist. LEXIS 17256, at *11-12 (citing cases in support); *accord Textiles Ltd.*, 2007 U.S. Dist. LEXIS 64247, at *12-13 (while burden of proof at trial will be substantial, plaintiff is not required to demonstrate each of the veil piercing claims at the pleading stage, and

complaint adequately put defendants on notice of veil piercing claims); *Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366, 2006 U.S. Dist. LEXIS 76004, at *29-30 (S.D.N.Y. Oct. 18, 2006) (while evidence ultimately may not be able to establish alter ego claim, plaintiffs' allegations "suggest a high degree of interrelatedness" to permit fraud case to proceed against all defendants); *In re Alstom SA Secs. Litig.*, 454 F. Supp. 2d 187, 216 (S.D.N.Y. 2006) ("[t]hough these allegations do not implicate several of the factors . . . for consideration in veil-piercing analysis, they suffice, if by narrow margin, to put [defendants] on notice of Plaintiffs' claims, and thus fulfill Rule 8(a)'s requirement at this stage in the litigation"). Accordingly, TAG's veil piercing claim should not be dismissed.

## V. RULE 8 OF THE FEDERAL RULES PERMIT TAG TO PLEAD ITS FOURTH CAUSE OF ACTION FOR CONVERSION IN THE ALTERNATIVE TO ITS BREACH OF CONTRACT CLAIM

TAG's claim for conversion should not be dismissed because it pleads this claim *in the alternative* to its claim for breach of contract. (Compl. ¶¶ 53-57.) Rule 8 allows plaintiffs to plead two or more claims in the alternative. Fed. R. Civ. P. 8(a)(3) (2008) (a demand for relief . . . may include relief in the alternative"); Fed. R. Civ. P. 8(d)(2) (2008) ("[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"); *accord Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) ("Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to 'plead two or more statements of a claim, even within the same count, regardless of consistency.'"[4]) (citation omitted); *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007) ("Fed R. Civ. P. 8(a) allows plaintiffs to plead the two theories alternatively."). Assuming that the Agreement does not cover the issue of whether HSS must return the $450,000 advance payment,

---

[4]   Prior to the December 1, 2007 amendments to the Federal Rules, Rule 8(d)(2) was embodied in Rule 8(e)(2).

TAG's fourth cause of action is not subject to dismissal on the ground that it is duplicative of plaintiffs' breach of contract claim since it is pled in the alternative. Indeed, this Court, in *Fantozzi v. Axsys Techs.*, 07 Civ. 2667, 2007 U.S. Dist. LEXIS 61448, at *7-8 (S.D.N.Y. Aug. 20, 2007), held that plaintiffs' conversion claim was not subject to dismissal on the ground that it was duplicative of plaintiffs' breach of contract claim because the conversion claim assumed that the Agreement did not cover the alleged facts underlying the conversion claim.

In order to assert a claim of conversion, a plaintiff must allege: "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand of the property, and (4) the demand for the return is refused." *Fagan v. First Sec. Invs., Inc.,* No. 04 Civ. 1021, 2006 U.S. Dist. LEXIS 66065, at *10 (S.D.N.Y. Sept. 15, 2006) (internal quotations and citation omitted). TAG alleges that HSS has kept the $450,000 advance deposit, which rightfully belongs to TAG, and TAG has demanded that it be returned, which demand has been refused by HSS. (Compl. ¶¶ 53-57.) Accordingly, TAG's claim of conversion should not be dismissed.

## VI.   TAG'S SIXTH CAUSE OF ACTION FOR INDEMNIFICATION IS NOT REDUNDANT OF ITS BREACH OF CONTRACT CLAIM OR PREMATURE

Through its sixth cause of action, TAG seeks indemnification from Defendants in the event it is ever found liable to its Client by virtue of Defendants' conduct. (*Id.* ¶¶ 63-66.) Defendants allege that TAG's claim for indemnification must fall because it is redundant of its breach of contract claim, speculative and not yet ripe. (Defs.' Mem. at 15-16.) New York courts, however, have allowed actions sounding in both breach of contract and indemnity. *See O'Brien v. Key Bank, N.A.*, 223 A.D.2d 830 (3d Dep't 1996); *State of N.Y. v. Ehasz*, 80 A.D.2d 671 (3d Dep't 1981). The court in *Ehasz* found that when "the issue of a right to indemnity will involve factual issues similar to those at issue in the cause of action based on breach of contract,

18

. . . it should be allowed to stand in the interests of fairness and to promote judicial economy." 80

A.D.2d at 672.   Furthermore, TAG's indemnification claim is not speculative as "[i]t is well

established that a court may render a conditional judgment on the issue of indemnity, pending

determination of the primary action, in order that the indemnitee obtain the earliest possible

determination as to the extent to which he or she may expect to be reimbursed."   *O'Brien,* 223

A.D.2d at 831 (citations omitted).   At least some of cases cited by Defendants in support of their

contention that TAG's claim for indemnification is speculative are not applicable here because

they involved independent actions brought solely to recover on a cause of action for indemnity or

contribution.   *See Plantronics, Inc. v. United States of Am.,* No. 88 Civ. 1892, 1990 U.S. Dist.

LEXIS 5788 (S.D.N.Y. May 16, 1990); *Bay Ridge Air Rights, Inc. v. State of N.Y.,* 57 A.D.2d 237

(3d Dep't 1977).   Here, TAG has brought its indemnification claim in conjunction with its breach

of contract, and both claims should be resolved simultaneously in the interest of fairness and to

promote judicial economy.   Accordingly, TAG's claim for indemnification should not be

dismissed.

## VII.    TAG'S CLAIMS FOR PUNITIVE DAMAGES SHOULD NOT BE DISMISSED

TAG does not seek punitive damages for its breach of contract claim; rather, it

seeks such damages for its claims for fraudulent inducement, tortious interference with contract,

and conversion.   Punitive damages are clearly permitted for those claims.   "New York courts have

held that punitive damages may be appropriate in actions for a variety of tort actions, and that the

decision to award such damages lies with the fact finder."   *Am. Bldg. Main. Co. of N.Y. v. Acme*

*Prop. Servs., Inc.,* 515 F. Supp. 2d 298, 324 (N.D.N.Y. 2007) (citation omitted).   Furthermore,

TAG should be allowed to proceed on its properly-pleaded claims and develop the record more

fully before a determination is made regarding the appropriateness of TAG's request for punitive damages. *Id.*

## CONCLUSION

For the reasons set forth above, TAG respectfully requests that the Court deny Defendants' motion to dismiss the second, third, fourth, sixth and seventh causes of action, and all claims for punitive damages and attorneys' fees in Plaintiffs' First Complaint, and grant TAG any other relief that the Court deems just and proper.

Dated:    March 14, 2008
          New York, New York

Respectfully submitted,

Neal Klausner, Esq.
Allie Lin, Esq.
DAVIS & GILBERT LLP
1740 Broadway
New York, New York 10019
(212) 468-4800
nklausner@dglaw.com

-and-

Steven F. Ritardi, Esq. (*pro hac vice*)
CARMAGNOLA & RITARDI, L.L.C.
60 Washington Street
Morristown, New Jersey 07960
(973) 267-4445
sritardi@cr-law.net